**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:15-cv-56 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| UNITED STATES DEPARTMENT | § | |
| OF LABOR, and THOMAS E. PEREZ, | § | |
| in his Official Capacity as | § | |
| SECRETARY OF LABOR, | § | |
| Defendants. | § | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARYINJUNCTION/STAY OF ADMINISTRATIVE
PROCEEDINGS**

TO THE HONORABLE JUDGE OF SAID COURT:

The State of Texas seeks declaratory and injunctive relief against the United States of America, the United States Department of Labor ("Department"), and Thomas E. Perez in his official capacity as Secretary of Labor, regarding the Department's recently promulgated rule redefining "spouse" under the Family and Medical Leave Act ("FMLA"), which will be effective and binding on all qualifying employers—including the State—beginning March 27, 2015. The Department's rule attempts to override Texas law and force Texas employers, including state agencies, to recognize out-of-state same-sex unions as marriages. By attempting to sideline Texas law by agency rule and require Texas employers to grant FMLA spousal care benefits to individuals in relationships not recognized as marriage in Texas, the

Department's action flies in the face of the Supreme Court's ruling in *Windsor*, which struck down federal interference with state law governing domestic relations. 80 Fed. Reg. No. 37, at 9989-10001 ("Final Rule" or "Rule"), attached as Ex. A. The Rule is also contrary to the federal full faith and credit statute, invalidly attempts to abrogate the States' sovereign immunity, and invalidly attempts to preempt Texas domestic-relations law. For these reasons and others, the Rule is invalid on its face.

## I. PARTIES

1.      Plaintiff is the State of Texas (hereinafter "State" or "Texas"), one of the sovereign States of the United States of America. If the Final Rule takes effect, it would purportedly nullify Texas law. Moreover, the State of Texas is an "employer" as defined in 29 U.S.C. § 2611(4)(A)(iii); (B). The Department's Final Rule impacts Texas in its capacity as an employer. Ex. A at 9994. It also impacts Texas by purporting to abrogate the State's sovereign immunity.

2.      Defendants are the United States of America, the United States Department of Labor, and Thomas E. Perez, in his official capacity as Secretary of Labor. Defendants may be served in accordance with FED. R. CIV. P. 4(i) by serving Thomas E. Perez, Secretary of Labor, United States Department of Labor, 200 Constitution Ave. NW, Washington D.C. 20240; by serving the Civil Process Clerk for Eric H. Holder, Jr., United States Attorney General, Department of Justice, 950 Pennsylvania Avenue, N.W, Room 4400, Washington, DC 20530-0001, and by serving the Civil Process Clerk for John R. Parker, Acting United States Attorney for the Northern District of Texas, 1100 Commerce, 3rd Floor, Dallas, TX 75242-1699.

## II.  JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this suit concerns the scope of the Department's authority to issue the Final Rule redefining the term spouse and granting leave to include same-sex spouses contrary to law.   This Court also has jurisdiction to compel an officer of the Department of Labor to perform his or her duty pursuant to 28 U.S.C. § 1361.

4.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(e) because the United States, one of its agencies, and one of its officers in his official capacity are Defendants; a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and Plaintiff Texas and its constituent agencies are employers in Wichita Falls, Texas who the Department seeks to make violate Texas law on March 27, 2015 should the Final Rule go into effect.

5.     The Court is authorized to award the requested declaratory relief under the Administrative Procedure Act and the Declaratory Judgment Act, 5 U.S.C. § 706, 28 U.S.C. §§ 2201-2202, and is authorized to award the requested injunctive relief under 28 U.S.C. § 1361.

## III.  FACTUAL BACKGROUND

### A.     *Windsor* and the Full Faith and Credit Statute.

5.     "'[W]hen the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States.'" *United States v. Windsor*, 133 S.Ct. 2675, 2695 (2013)

(quoting *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383–384 (1930)).   In 1996, Congress enacted Section 3 of the Defense of Marriage Act ("DOMA"), which defined "marriage" as "only a legal union between one man and one woman as husband and wife; the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7.  The Supreme Court held this provision to be unconstitutional in *Windsor* because it was a "deviation from the usual tradition of recognizing and accepting state definitions of marriage . . . operat[ing] to deprive same-sex couples of the benefits and responsibilities that come with the federal recognition of their marriages." 133 S.Ct. at 2693.

6.     By contrast, Section 2 of DOMA was not challenged in *Windsor* and amends the federal full faith and credit statute to permit States to refuse to recognize out-of-state same-sex unions as marriages.  *Id.* 2682-83.  Specifically, the full faith and credit statute currently provides that:

> [n]o State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons  of the same sex that is treated as a marriage under the laws of such other State . . . or a right or claim arising from such relationship.

28 U.S.C. § 1738C.

7 .     The Supreme Court in *Windsor* did not alter any State's right to define marriage according to the will of its electorate.   Instead, the *Windsor* Court reaffirmed the States' authority to define and regulate marriage, 133 S.Ct. at 2691-93, which is the very principle embodied in the full faith and credit statute.  Far from mandating State marriage policy, the Court disapproved of federal interference with

State marriage law.  *See id*. at 2692-93 ("'[T]he states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce . . . [and] the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce.'" (quoting *Haddock v. Haddock*, 201 U.S. 562, 575 (1906) (alterations and omission in original)).

8.      In reaction to the *Windsor* decision, the President urged the Cabinet to "review all relevant federal statutes to implement the decision, including its implications for federal benefits and programs."  U.S. Department of Labor, Wage and Hour Division, Fact Sheet: Final Rule to Amend the Definition of Spouse in the Family and Medical Leave Act Regulations, Feb. 2014, at 1, attached as Ex. B.  The Department concluded that "[b]ecause of the Supreme Court's ruling in *Windsor* that Section 3 of DOMA is unconstitutional, the Department is no longer prohibited from recognizing same-sex marriages as a basis for FMLA spousal leave."  Ex. A at 9991.

## B.     The Department Rewrites the FMLA.

9.      The FMLA defines "spouse" as "a husband or wife, as the case may be." 29 U.S.C. § 2611(13).  The Department's 1993 Interim Final Rule defined "spouse" as "a husband or wife as defined or recognized under state law for purposes of marriage in states where it is recognized."  Ex. A at 9990 (citing 58 FR 31817, 31835 (June 4, 1993)).  "The 1995 Final Rule clarified that the law of the State of the employee's residence would control for determining eligibility for FMLA spousal leave."  *Id*. (citing 60 FR 2191).

---

910.   After *Windsor*, on June 27, 2014, the Department commenced rulemaking by publishing a Notice of Proposed Rulemaking (Notice), in which it "proposed to change the definition of spouse to look to the law of the jurisdiction in which the marriage was entered into (including common law marriages), as opposed to the law of the State in which the employee resides."  Ex. A at 9991 (III. Summary of Comments).  The proposed rule reads as follows:

> **825.102 Definitions.**
> * * * * *
> *Spouse,* as defined in the [FMLA], means a husband or wife. For purposes of this definition, husband or wife refers to the other person with whom an individual entered into marriage as defined or recognized under state law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State. This definition includes an individual in a same-sex or common law marriage that either: (1) Was entered into in a State that recognizes such marriages; or (2) If entered into outside of any State, is valid in the place where entered into and could have been entered into in at least one State.
> * * * *

Ex. A at 9991; 79 Fed. Reg. 36445, attached as Ex. C.  The Department contends it "is moving from a state of residence rule to a rule based on the jurisdiction where the marriage was entered into (place of celebration) . . . ."  Ex. A at 9991.

11.   The Department received 77 comments to the Notice, including two that "raised concerns about a tension between the proposed definition and state laws prohibiting the recognition of same-sex marriages" and noting that the proposed definition of spouse "is 'at odds' with the Supreme Court's decision in *Windsor* because the definition does not defer to the laws of the States that define marriage as the

union of one man and one woman," in direct contravention of the full faith and credit statute.  Ex. A at 9991.

12.    In response to the concerns about the conflict with state laws that prohibit same-sex marriage, the Department concluded that "[t]he Final Rule does not require States to recognize or give effect to same-sex marriages or to provide any state benefit based on a same-sex marriage."  Ex. A at 9994.  Instead, the Department contends "[t]he Final Rule impacts States only in their capacity as employers and merely requires them to provide unpaid FMLA leave to eligible employees based on a federal definition of spouse."  Ex. A at 9994.   The Department's conclusion ignores that the federal full faith and credit statute expressly reserves the right to the States to refuse to recognize as marriages same-sex unions performed under the laws of other States.  28 U.S.C. § 1738C; *see also Windsor,* 133 S.Ct. at 2693 (criticizing the federal law's "unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage").

13.    The comment period for the proposed rule ended on August 11, 2014, and the Final Rule regarding the definition of "spouse" to include same-sex couples for purposes of the FMLA takes effect on March 27, 2015.

### C.    Texas Does Not Recognize Same-Sex Unions as Marriages.

14.    Consistent with the federal full faith and credit statute and *Windsor*, Texas law limits recognition of out-of-state marriages to opposite-sex unions.  TEX. CONST. art. I, § 32; TEX. FAM. CODE § 6.204.  Texas law further prohibits the issuance of a Texas license "for the marriage of persons of the same sex."  TEX. FAM. CODE

§ 2.001(b); *see also id.*§ 2.401(a) (limiting informal marriages to unions of "a man and woman"). And Texas law declares same-sex marriages void as against public policy and prohibits any state agency from giving effect to a "public act, record, or judicial proceeding that creates, recognizes, or validates a marriage between persons of the same sex or a civil union in this state or any other jurisdiction . . . ." TEX. FAM. CODE § 6.204(b), (c).

15.    By requiring Texas to recognize out-of-state same-sex marriages for purposes of the FMLA, the Department is forcing the State to violate either state law or a federal regulation.

**D.    The Final Rule Conflicts with the Federal Full Faith and Credit Statute and *Windsor***

16.    The Final Rule conflicts with the federal full faith and credit statute, which acknowledges the States' right to refuse to recognize same-sex unions as marriages performed under the laws of other states. 28 U.S.C. § 1738C. To grant an application for FMLA spousal benefits under the Final Rule, Texas must necessarily give force and effect to out-of-state same-sex marriages, even though those marriages are void in Texas.

17.    The Final Rule also conflicts with *Windsor,* in which the Supreme Court struck down Section 3 of DOMA, in part, because "regulation of domestic relations" is "an area that has long been regarded as a virtually exclusive province of the States." *Windsor*, 133 S.Ct. at 2691 (quoting *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)). Section 3 of DOMA's interference with state regulations had the effect of creating contradictory federal and state marriage regimes, thereby "diminishing the stability

and predictability of basic personal relations the State has found it proper to acknowledge and protect." *Id.* at 2694.

18.     The Final Rule, like Section 3 of DOMA, interferes with Texas's statutes and constitution that prohibit same-sex marriage and bar recognition of out-of-state same-sex unions as marriages.   The Department's Rule diminishes stability and predictability of marriage in Texas by forcing Texas employers to acknowledge same-sex unions as marriages to grant the spousal care benefit, while the federal full faith and credit statute upholds Texas's right to disregard such unions according to Texas policy.   This erosion of stability and predictability of State definitions of marriage runs afoul of *Windsor.*

19.     Further, as the Supreme Court explained in *Windsor*, "the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations," and "[i]n order to respect this principle, the federal courts, as a general rule, do not adjudicate issues of marital status even when there might otherwise be a basis for federal jurisdiction." *Windsor*, 133 S.Ct. at 2691; *see also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (noting that the "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees").   Any claim against an employer under the FMLA for violation of the Rule would naturally require a federal court to determine whether the claimant is actually married, which necessarily forces federal courts to adjudicate matters the Supreme Court has repeatedly held there is no federal jurisdiction over.

**E.     Congress Did Not Preempt State Law Defining Marriage in the FMLA**

20.     Congress did not preempt State law defining "marriage" in the FMLA, and the Final Rule is a regulatory attempt to do just that.  Indeed, Congress could not have intended to preempt State law refusing to recognize same-sex marriage because when the FMLA was enacted in 1993, no State had acted to permit same-sex marriage.  *See Windsor*, 133 S.Ct. at 2683.  Because the intent of Congress guides the preemption inquiry and Congress could not have intended to preempt laws such as those in Texas, the Department cannot accomplish by Rule the preemption is seeks.  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("the purpose of Congress is the ultimate touchstone in every pre-emption case").

21.     Moreover, conflict preemption does not apply because Texas law does not conflict with the plain language of the FMLA or Congressional intent, but rather only with the Department's regulatory expansion of the FMLA.  *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute.").  This is made all the more clear by the fact the rule in place on March 26 gives full effect to Texas law, but the Final Rule that takes effect on March 27 will seek to supplant that law.

22.     The Department's conclusion that "[t]he Final Rule does not require States to recognize or give effect to same-sex marriages or to provide any state benefit based on a same-sex marriage" ignores the fact that the State cannot comply with the Final Rule and with Texas law at the same time.  Accordingly, the Rule could be valid only if Congress intended to preempt the States' definitions of marriage, which is something "'that has long been regarded as a virtually exclusive province of the

States.'" *Windsor*, 133 S.Ct. at 2691 (quoting *Sosna*, 419 U.S. at 404).

### F.    The New Rule Harms the State as Well as Texas Employers

23.    The Final Rule forces Texas to violate its own state laws by recognizing the laws of other states relating to same-sex marriages.  By preventing state officials from applying Texas law, the Rule causes an irreparable injury because it prevents implementation and enforcement of the will of the people of Texas.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, Circuit Justice) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people . . . is enjoined.").

24.    In addition to harming the State by preventing it from enforcing its laws, the Final Rule places an enormous burden on the employers in Texas to approve or disapprove leave requests that have already been made—all without the final guidance of the United States Supreme Court and the Fifth Circuit Court of Appeals, both of which have pending cases to decide this very contested underlying issue. Employers in Texas will be called upon to decide issues that the Supreme Court has not yet decided, and those employers do so without the benefit of briefing and oral

arguments for the full presentation of the issues on both sides.  This includes the State as an employer, which employs over 310,000 full-time equivalent employees. State Auditor's Office, A Summary Report on Full-time Equivalent State Employees for Fiscal Year 2014, Feb. 2015, *available at* http://www.sao.state.tx.us/Reports/ report.aspx?reportnumber=15-705.

## IV.  CLAIMS FOR RELIEF

### COUNT ONE

**Declaratory Judgment Under the Administrative Procedure Act, 5 U.S.C. § 706, that the Final Rule Is Unlawful.**

25.    The allegations in paragraphs 1 through 24 are reincorporated herein.

26.    The Department's Rule redefining "spouse" for purposes of the FMLA constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

27.    The Administrative Procedure Act requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

28.    The Final Rule conflicts with the definition of "spouse" in the FMLA.  29 U.S.C. § 2611(13).

29.    The Final Rule violates the federal full faith and credit statute, which expressly relieves any state from giving effect to "any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the

same sex that is treated as a marriage under the laws of such other State, . . . or a right or claim arising from such relationship" and preserves the States' rights to regulate marriage.  28 U.S.C. § 1738C.  Instead, the Rule forces Texas to "give effect to" a same-sex marriage from another State by granting FMLA benefits in violation of clear Texas law.

30.    The Department's Final Rule also violates separation of powers by purporting to expand federal court jurisdiction to cover domestic relations issues. "'[R]egulation of domestic relations'" is "'an area that has long been regarded as a virtually exclusive province of the States,'" which is why the Supreme Court has long held that federal courts lack jurisdiction to resolve those issues.  *Windsor*, 133 S.Ct. 2691 (quoting *Sosna*, 419 U.S. at 404)).  Congress, not an agency, can expand federal court jurisdiction, U.S. CONST. art. III, § 1-2; *Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (U.S. 2009), and the Department's subtle attempt to do so in the Rule violates the constitutional separation of powers.

31.    The Final Rule illegally attempts to preempt State law defining marriage because historic powers reserved to the States, such as domestic relations, cannot be superseded by federal act, "unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Gregory v. Ashcroft*, 501 U.S. 452, 460-70 (1991). Congress expressed its clear and manifest purpose in the FMLA to "minimize the potential for employment discrimination" and to "promote the goal of equal employment opportunity for women and men . . . ." 29 U.S.C. § 2601(b)(5).

32.    Because the Department's Final Rule is not in accordance with the law as articulated above, it is unlawful, violates 5 U.S.C. § 706, and should be set aside.

## COUNT TWO

**Declaratory Judgment Under the Administrative Procedure Act, 5 U.S.C. § 706, that the Final Rule Is Unlawful.**

33.    The allegations in paragraphs 1 through 32 are reincorporated herein.

34.    The Department's Rule redefining "spouse" for purposes of the FMLA constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

35.    The Rule violates the Tenth Amendment because its interpretation of "spouse" effectively commandeers Texas's regulation of domestic relations by requiring the State to apply another State's marriage law. *See Windsor*, 133 S. Ct. at 2691 (explaining that "regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States," and "recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens") (internal quotation marks and citations omitted); *New York v. United States*, 505 U.S. 144, 162 (1992) ("While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions.").

36.    Because the Rule is not in accordance with the law articulated above, it is unlawful, violates 5 U.S.C. § 706, and should be set aside.

## COUNT THREE

**Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706 that the Department's Rule Unlawfully Attempts to Abrogate State Sovereign Immunity.**

37.     The allegations in paragraphs 1 through 36 are reincorporated herein.

38.     The Final Rule improperly abrogates the State's sovereign immunity based upon anecdotal comments in the Federal Register rather than on the basis of Congressional findings and concerns about State workplace discrimination against employees with same-sex spouses with a remedy proportional and congruent to the relevant wrongs.

39.     Although the Supreme Court held that Congress validly abrogated the States' sovereign immunity with the family-care provision of the FMLA, it did so only on the basis of Congressional findings and concerns about State workplace gender discrimination.  *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 728 and n.2 (2003) (observing that the FMLA aims to promote the goal of equal employment opportunity for women and men).  When the Supreme Court later concluded that the self-care provision of the FMLA did not abrogate the States' sovereign immunity, it did so because the self-care provision was designed to address discrimination based on illness and there was no "evidence of a pattern of state constitutional violations accompanied by a remedy drawn in narrow terms to address or prevent those violations."  *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1334-35 (2012).

40.     In adoption of the Final Rule, the Department of Labor pointed to no Congressional findings or concerns about workplace leave discrimination by the States (or any other employer) based on sexual-orientation.  Indeed, the Department did not even consider whether Congress intended the term "spouse" to include individuals in same-sex relationships that are not recognized as marriages in their State of residence.  Had it, the Department would have found nothing to support its new interpretation because when the FMLA was enacted in 1993, States did not permit same-sex marriage.  The Department cannot expand abrogation of the State's sovereign immunity by rewriting the FMLA's definition of "spouse" as it was originally adopted by Congress.  *See* 29 U.S.C. § 2611(13) ("The term "spouse" means a husband or wife, as the case may be."); *see also Neinast v. Texas*, 217 F.3d 275, 281 (5th Cir. 2000) ("[O]ur operating premise must be that an agency . . . cannot have greater power to regulate state conduct than does Congress.").  If there are no Congressional findings of State wrongdoing regarding the conduct at issue in the Final Rule, the Department's mandate that the State comply with the FMLA framework in this new area cannot be a proportional and congruent remedy to the relevant wrongs.

## V.  DEMAND FOR JUDGMENT

Plaintiff respectfully requests the following relief from the Court:

1.     A declaratory judgment that the Department's Final Rule redefining "spouse" under the FMLA is substantively unlawful under the Administrative Procedure Act;

2.      Setting aside the Department's Final Rule redefining "spouse" under the
FMLA under the Administrative Procedure Act because it is substantively
unlawful;

3.      A declaratory judgment that the Department's Final Rule redefining "spouse"
under the FMLA is invalid because it attempts to abrogate the State's
sovereign immunity;

3.      Temporary relief, enjoining the Final Rule from taking effect on March 27,
2015;

4.      A final, permanent injunction preventing the Department from implementing
the Final Rule; and

5.      All other relief to which the Plaintiff may show itself to be entitled.

## VI.    APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARYINJUNCTION/STAY OF ADMINISTRATIVE PROCEEDINGS

1.      Plaintiff, the State of Texas, seeks a temporary restraining order and a
preliminary injunction pursuant to Federal Rule of Civil Procedure Rule 65 and
alternatively, a stay of administrative proceeding pursuant to the Administrative
Procedure Act, 5 U.S.C. § 705.  In particular, Plaintiff Texas requests this Court to
enjoin and/or stay the application of the Final Rule promulgated by the United States
Department of Labor effective March 27, 2015, and codified as 29 C.F.R. Part 825
which changes the definition of "spouse" and adds FMLA leave based thereon.

2.      The requirements for showing entitlement to a temporary restraining

order and preliminary injunction under Federal Rule of Civil Procedure 65 are identical. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). To obtain a temporary restraining order and a preliminary injunction, Plaintiff Texas must show:

A.   there is a substantial likelihood that the Plaintiff, State of Texas, will prevail on the merits;

B.   there is a substantial threat that irreparable injury will result if the injunction is not granted;

C.   the threatened injury outweighs the threatened harm to the Defendants; and

D.   granting the preliminary injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Canal Auth. of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974). The requisite showing for a stay pending review is the same as that which applies to preliminary injunctions. *Corning Sav. & Loan Assoc. v. Federal Home Loan Bank Bd.,* 562 F.Supp. 279, 280 (U.S.D.C.–E.D. Arkansas, 1983).

A.   **Substantial likelihood that Plaintiff Texas will prevail:**

3.   For the reasons articulated in paragraphs 1 through 40, *supra*, of its Complaint for Declaratory and Injunctive Relief, Texas has met its burden to show a substantial likelihood that it will prevail on its claims that the Department's Final Rule redefining "spouse" for purposes of the FMLA is invalid.

### B.   Substantial threat that irreparable injury will result:

4.      On March 27, 2015 the Final Rule becomes effective.  The State of Texas
has no adequate remedy at law to contest the application of the Final Rule.
Preliminarily, by forcing state officials to choose between violating a federal rule to
comply with Texas law, and *vice versa*, the Rule causes an irreparable injury.  *See
Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the
irreparable harm of denying the public interest in the enforcement of its laws.");
*Wilson*, 122 F.3d at 719 ("[I]t is clear that a state suffers irreparable injury whenever
an enactment of its people . . . is enjoined.").

5.      Moreover, once the Final Rule goes into effect, employers must research
and apply marriage law—including the common-law of marriage—of other States.  In
Texas, where statutes and the state constitution prohibit the recognition of same-sex
unions as marriage, the Final Rule places an enormous burden on those employers to
approve or disapprove FMLA spousal leave requests—all without final guidance from
the United States Supreme Court and the Fifth Circuit Court of Appeals on this
contested issue.

### C.   Threatened injury outweighs the threatened harm to Defendants:

6.      Texas cannot simultaneously comply with the Final Rule and with state
law prohibiting recognition of same-sex marriage.  Today, before the Final Rule's
effective date, federal law does not preempt the States' definition of marriage, which
is something "that has long been regarded as a virtually exclusive province of the
States." *Windsor*, 133 S.Ct. at 2691.

7.     In most cases challenging same-sex marriage bans, courts have stayed their own orders striking down the ban pending the appeal to the Supreme Court, including in the Texas litigation.  *De Leon v. Perry*, 5:13-CV-982-OLG, 975 F. Supp. 2d 632, 666 (W.D. Tex. Feb. 26, 2014) (staying a preliminary-injunction order on same-sex marriage pending appeal); *id.*, Doc. 76 (W.D. Tex. Mar. 7, 2014) (staying all trial proceedings pending resolution of the interlocutory appeal); *see, e.g.*, Stay Order, *Herbert v. Kitchen*, No. 13A687 (U.S. Sup. Ct., Jan. 6, 2014) (staying a permanent injunction regarding same-sex marriage while the case is reviewed on appeal); *Perry. v. Schwarzenegger*, No. 10-16696, Doc. No. 14 (9th Cir. Aug. 16, 2010); *id.*, Doc. No. 425-1 (June 5, 2012) (staying an order on same-sex marriage as well as the court's own mandate pending resolution of the case by the Supreme Court); *Bishop v. Holder*, 962 F.Supp.2d 1252, 1296 (N.D. Okla. 2014) (staying order on same-sex marriage "pending the final disposition of any appeal"); *Wolf v. Walker,* 14-CV-64-BBC, 2014 WL 2693963 (W.D. Wis. June 13, 2014) (same); *Griego v. Olver*, D-202-CV-2013-2757, 2013 WL 5768197 (N.M. Dist. Ct. Sept. 3, 2013) (staying an injunction against New Mexico's same-sex marriage ban "pending appellate review"); *In re the Marriage of Heather Brassner & Megan E. Lade,* No. 13-012058(37), Fla. Cir. Ct., Broward Cnty (Aug. 4, 2014) (same).

8.     The Department's Final Rule renews a tension in the law that courts have remedied by issuing stays in the federal and State court proceedings governing same-sex marriage in Texas and throughout the nation.

### D.     <u>Preliminary injunction will not disserve the public interest:</u>

9.     A preliminary injunction would allow Texas to carry out the longstanding statutory policy of the Legislature, which "is in itself a declaration of the public interest . . . ." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937); *see also Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws" and when "the State is the appealing party, its interest and harm merges with that of the public.").

10.     Granting the preliminary injunction will maintain the status quo.

## CONCLUSION AND PRAYER FOR RELIEF

11.     Plaintiff respectfully requests temporary relief, enjoining the Final Rule from taking effect on March 27, 2015, and for all other relief to which the Plaintiff may show itself to be entitled.

Respectfully submitted,


KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

SCOTT KELLER
Solicitor General

CAM BARKER
Deputy Solicitor General

SHELLEY DAHLBERG
Associate Deputy Attorney General

ANGELA V. COLMENERO
Division Chief - General Litigation

MICHAEL P. MURPHY
Assistant Solicitor General

BETH KLUSMANN
Assistant Solicitor General

/s/ WILLIAM T. DEANE
WILLIAM T. DEANE
Texas Bar No. 05692500
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1534
FAX:  (512) 320-0667
bill.deane@texasattorneygeneral.gov

*ATTORNEYS FOR PLAINTIFF*