**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:15-cv-00056-O |
| | ) | |
| UNITED STATES OF AMERICA, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................. 1

BACKGROUND ................................................................................................ 3

    I.     Statutory and regulatory background...................................................... 3

          A.     The Family and Medical Leave Act............................................. 3

          B.     The Defense of Marriage Act and *United States v. Windsor*...................... 4

          C.     The February 2015 rule............................................................. 5

    II.    Texas's complaint and motion for preliminary injunction ..................... 6

ARGUMENT ................................................................................................... 6

    I.     Standards for entry of a preliminary injunction.................................... 6

    II.    Texas has not shown that it is likely to succeed on the merits because its suit fails the jurisdictional requirements of standing and ripeness and fails to state a valid claim for relief................................................................................... 7

          A.     The Court lacks subject matter jurisdiction over Texas's claims............... 7

               1.     This case presents serious questions of subject matter jurisdiction, which weighs against entry of preliminary relief. .......................... 7

               2.     Texas's suit fails the jurisdictional requirements of standing and ripeness. ......................................................................... 7

               3.     Federal courts cannot hear suits brought by state authorities seeking to establish that their own laws are not preempted by federal law. .................................................................... 10

          B.     Texas's complaint fails to state any valid claim for relief....................... 11

               1.     All of Texas's several claims are flawed because the challenged rule does not disturb or purport to disturb the Texas law of marriage; it only fine-tunes the operation of the federal Family and Medical Leave Act. ................................................... 11

               2.     *United States v. Windsor* does not support Texas's claims; if anything, *Windsor* weighs against Texas. ................................ 12

               3.     The February 2015 rule comports with 28 U.S.C. § 1738C, because the rule does not require Texas to "give effect" to any marriage.. 14

4.      The February 2015 rule does not unlawfully commandeer state authority. ........................................................................................ 16

5.      The Supreme Court has already held that the family-care provisions of the FMLA and the FMLA's policy of universal guaranteed leave are valid under Congress's authority to enforce the Fourteenth Amendment........................................................... 17

6.      The plaintiff's preemption-related arguments are misplaced because the February 2015 rule does not purport to preempt or otherwise displace Texas state marriage law................................. 20

7.      The February 2015 rule does not enlarge federal court jurisdiction. ........................................................................................ 20

8.      The February 2015 rule does not conflict with the FMLA........... 21

III.    Texas has not shown that preliminary relief is needed to prevent irreparable harm. ...................................................................................................... 21

IV.     Texas has not shown that the balance of equities tips in its favor or that an injunction is in the public interest. ....................................................... 24

CONCLUSION............................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982)....................................................................... 9

*Allen v. Wright*,
468 U.S. 737 (1984)....................................................................... 8

*Ankenbrandt v. Richards*,
504 U.S. 689 (1992)..................................................................... 21

*Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*,
779 F. Supp. 2d 542 (W.D. Tex. 2011).................................... 21, 22, 23

*Astrue v. Ratliff*,
130 S. Ct. 2521 (2010)................................................................. 16

*Chevron U.S.A. Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984)..................................................................... 21

*City of Abilene v. U.S. EPA*,
325 F.3d 657 (5th Cir. 2003)......................................................... 16

*De Leon v. Perry*,
975 F. Supp. 2d 632 (W.D. Tex. 2014)........................................... 12

*Digital Generation, Inc. v. Boring*,
869 F. Supp. 2d 761 (N.D. Tex. 2012)............................................ 21

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985).......................................................... 7

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983)......................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................... 8

*Garcia v. San Antonio Metro Transit Auth.*,
469 U.S. 528 (1985)..................................................................... 16

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
335 F.3d 357 (5th Cir. 2003)........................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................ 8

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)................................................................ 9

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)................................................................ 9

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923)................................................................ 9

*Munaf v. Geren*,
  553 U.S. 674 (2008)................................................................ 7

*Narvaez v. Wilshire Credit Corp.*,
  757 F. Supp. 2d 621 (N.D. Tex. 2010) .................................. 22

*Neinast v. Texas*,
  217 F.3d 275 (5th Cir. 2000) .................................................. 18

*Nev. Dep't of Hum. Res. v. Hibbs*,
  538 U.S. 721 (2003)............................................ 17, 18, 19, 20

*New York v. United States*,
  505 U.S. 144 (1992)................................................................ 17

*PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*,
  418 F.3d 535 (5th Cir. 2005) .................................................. 21

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) .................................................. 22

*Printz v. United States*,
  521 U.S. 898 (1997)................................................................ 17

*Reno v. Condon*,
  528 U.S. 141 (2000)........................................................ 16, 17

*Star Satellite, Inc. v. City of Biloxi*,
  779 F.2d 1074 (5th Cir. 1986). .............................................. 25

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).................................................................. 8

*TTEA v. Ysleta del Sur Pueblo*,
  181 F.3d 676 (5th Cir. 1999) .................................................. 10

*United States v. Miss. Dep't of Pub. Safety*,
  321 F.3d 495 (5th Cir. 2003) ............................................................................ 16

*United States v. Windsor*,
  133 S. Ct. 2675 (2013) ............................................................................. passim

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ............................................................................................ 10

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ........................................................................................ 7, 21

## CONSTITUTIONAL PROVISIONS

Equal Protection Clause, U.S. Const. amend. XIV, § 1 ............................................. 12, 13

Full Faith and Credit Clause, U.S. Const. art. IV, § 1 ........................................... 14, 15, 24

U.S. Const. amend. XIV ................................................................................. 2, 5, 17, 18

U.S. Const. art. III, § 2, cl. 1 ......................................................................... 1, 8, 9

## FEDERAL STATUTES

28 U.S.C. § 1331 ............................................................................................... 20

42 U.S.C. § 416(h)(1)(A)(i) .................................................................................. 16

Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706 ......................................... 6

Declaratory Judgment Act, 28 U.S.C. § 2201 .......................................................... 6, 10

Defense of Marriage Act, 1 U.S.C. § 7 ........................................................ 4, 12, 13, 15

Defense of Marriage Act, 28 U.S.C. § 1738C ....................................................... passim

Defense of Marriage Act, Pub. L. No. 104-199, 110 Stat. 2419 (1996) ............................. 4

Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ............................ passim

## FEDERAL REGULATIONS

29 C.F.R. pt. 825 ............................................................................................... 4

## FEDERAL RULES

Fed. R. Civ. P. 65 ............................................................................................... 6

**LOCAL RULES**

Local Rule 7.1 ................................................................................................... 7

**OTHER AUTHORITIES**

Brief for the United States as Amicus Curiae Supporting Petitioners, *Obergefell v. Hodges*, Nos. 14-556, 14-562, 14-571, 14-574 (U.S.)......................................... 12

Defense of Marriage Act, H.R. Rep. No. 104-664 (1996) ................................. 15

Definition of Spouse Under the Family and Medical Leave Act, 80 Fed. Reg. 9989 (Feb. 25, 2015). ...................................................................................................... 5, 6

The Family and Medical Leave Act, 79 Fed. Reg. 36,445 (proposed June 27, 2014)........ 5

## PRELIMINARY STATEMENT

Texas's request for the extraordinary relief of a preliminary injunction should be denied. Texas's federalism-based claims are unfounded because the Department of Labor's February 2015 regulation does not produce any conflict between federal and state authority. To the contrary, the regulation pertains only to leave rights under the federal Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* It does not interfere in any way with the Texas law of marriage or Texas's enforcement of its own laws. For this fundamental reason, as well as other reasons set forth below, Texas cannot show that it is likely to succeed on the merits of its claims—a prerequisite for a preliminary injunction. Texas also has failed to show that it will face irreparable harm if emergency relief is denied. Nor has it met the other requirements for preliminary relief.

With respect to likelihood of success, as an initial matter, Texas's claims fail for lack of standing. Dismissal of this suit is appropriate because it presents no "case" or "controversy" under Article III of the Constitution. Texas cannot rely on supposed injuries to Texas private employers to establish standing, and even if it could, it has failed to identify any particular employer that is injured by the February 2015 rule. Texas also cannot establish standing based on its own interests. It has not shown that it plans to deny any Texas state employee's request for leave to care for a seriously ill same-sex spouse, and any possibility that a state employee would be denied leave in a way that violated the minimal requirements of the FMLA is purely hypothetical. This Court also cannot consider Texas's claims that its laws are not validly preempted, because the Supreme Court has held that such claims do not fall within the jurisdiction of federal district courts.

Texas's claims are also legally unfounded on the merits. To begin with, Texas fundamentally misconstrues the February 2015 regulation that is the subject of its challenge. The

February 2015 regulation does not alter or displace Texas state law regarding marriage at all. Rather, it merely adopts the state laws of Texas and other states as the basis for determining whether an employee is entitled to take leave to care for a seriously ill "spouse" under the FMLA, an exclusively federal law. Specifically, the February 2015 rule provides that an employee validly married in one state is treated as having a "spouse" for the limited federal purpose of FMLA leave even if his or her marriage is not recognized under the law of the state where he or she resides or works. The rule does not purport to dictate what marriages are to be recognized under any state's law, including the law of Texas. Thus, the February 2015 rule, properly understood, wholly comports with the Constitution and principles of federalism.

*United States v. Windsor*, 133 S. Ct. 2675 (2013), provides no support for Texas's claims; in fact, *Windsor* reaffirmed that federal laws that draw lines based on marriage do not necessarily have to track state-law definitions of marriage. The February 2015 rule also comports with section 2 of the federal Defense of Marriage Act, 28 U.S.C. § 1738C, because § 1738C pertains only to wholesale recognition by a state of an out-of-state marriage of a same-sex couple, and the February 2015 rule does not require Texas to provide any such recognition. The February 2015 rule also does not unlawfully conscript state employees in implementing federal policy, because the imposition of requirements on a state in its capacity as an employer does not amount to unconstitutional "commandeering" of state authority. Finally, the February 2015 rule lies within the bounds of Congress's exercise of its power to enforce the Fourteenth Amendment; the rule adheres to Congress's policy of establishing universal standards for family leave, which the Supreme Court has held to be a congruent and proportional response to the problem of workplace gender discrimination.

Texas also has not shown that it faces any imminent threat of irreparable harm. Texas has

not shown that it is imminently faced with any request for spousal-care leave from an employee who is otherwise ineligible for leave. Even if Texas does face such a request, the harm that Texas claims would ensue from having to grant such a request does not qualify as irreparable harm. Texas also has not shown that the balance of equities tips in its favor or that an injunction is in the public interest. For all these reasons, preliminary injunctive relief should be denied.

## BACKGROUND

I.   **Statutory and regulatory background**

A.   **The Family and Medical Leave Act**

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, entitles eligible employees of covered employers to take unpaid leave or substitute accrued paid leave for up to 12 work weeks in a year for certain reasons, including birth and care of a newborn child; placement of a child for adoption or foster care; care of a spouse, parent, or child with a serious health condition; inability to work due to the employee's own serious health condition; or a qualifying exigency arising out of military service by a spouse, child, or parent. *See* 29 U.S.C. § 2612. Congress granted the Department of Labor authority to prescribe regulations to implement the FMLA. *Id.* § 2654.

The FMLA defines the term "spouse" as "a husband or wife, as the case may be." *Id.* § 2611(13). Different states have different laws governing marriage, and an employee's home, place of employment, and place of marriage may not all be in the same state. Thus, as part of implementing the FMLA, the Department of Labor prescribed more specific rules regarding who qualifies as a "spouse" under the FMLA. From 1995 to the present, the Department of Labor's regulations defined "spouse" based on the law of the state where the employee resides:

> *Spouse* means a husband or wife as defined or recognized under State law for purposes of marriage in the State where the employee resides, including common law marriage in States where it is recognized.

29 C.F.R. § 825.102 (2014); *see also id.* § 825.122(b) (employing identical language).

### B.      The Defense of Marriage Act and *United States v. Windsor*

In 1996, Congress enacted the Defense of Marriage Act (DOMA), Pub. L. No. 104-199,

110 Stat. 2419 (1996). Section 3 of DOMA defined the terms "marriage" and "spouse" as limited

to legal unions between persons of the opposite sex:

> § 7. Definition of "marriage" and "spouse"
>
> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. § 7, *invalidated by United States v. Windsor*, 133 S. Ct. 2675 (2013). The DOMA

applied these definitions to all federal statutes and regulations, including the FMLA.

In *Windsor*, the Supreme Court held DOMA section 3 "unconstitutional as a deprivation

of the liberty of the person protected by the Fifth Amendment," which "the equal protection

guarantee of the Fourteenth Amendment" made "all the more specific and all the better

understood and preserved." 133 S. Ct. at 2695. The Court found that same-sex couples whose

marriages were denied recognition under DOMA section 3 had "their lives burdened . . . in

visible and public ways" by that denial. 133 S. Ct. at 2694. By barring application of a great

number of statutes that turned on marriage, section 3 not only "wr[ote] inequality into the entire

United States Code," *id.*, but also brought "financial harm to children of same-sex couples" and

divested such couples of "the duties and responsibilities that are an essential part of married life

and that they in most cases would be honored to accept," *id.* at 2695. Section 3 "place[d] same-

sex couples in an unstable position of being in a second-tier marriage," "demean[ed]" those

couples, and "humiliate[d]" the tens of thousands of children being raised by such couples. *Id.* at

2694. Section 3 "instruct[ed] . . . all persons with whom same-sex couples interact, including

their own children, that their marriage is less worthy than the marriages of others." *Id.* at 2696.

While it invalidated section 3 of DOMA, the Supreme Court in *Windsor* was not presented with, and did not pass on, the constitutionality of section 2 of DOMA, 28 U.S.C. § 1738C, which provides that no state is required to give effect to any "public act, record, or judicial proceeding" of any other state "respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State . . . or a right or claim arising from such relationship." *Id.*

The Court in *Windsor* also did not directly resolve whether states are required under the Fourteenth Amendment to permit marriage between persons of the same sex or to recognize out-of-state marriages between persons of the same sex. Those issues are before the Supreme Court this Term in *Obergefell v. Hodges*, Nos. 14-556, 14-562, 14-571, 14-574 (U.S.).

### C. The February 2015 rule

On June 27, 2014, the Department of Labor issued a notice of proposed rulemaking soliciting comment on a proposed rule that would change the regulatory definition of "spouse" to refer to the law of the state where the employee entered into the marriage instead of the state where the employee resides. The Family and Medical Leave Act, 79 Fed. Reg. 36,445 (proposed June 27, 2014). After collecting and reviewing public comments, on February 25, 2015, the Department of Labor issued a final rule adopting the "place of celebration" rule in place of the prior "place of residence" rule. Definition of Spouse Under the Family and Medical Leave Act, 80 Fed. Reg. 9989 (Feb. 25, 2015) (to be codified in scattered sections of 29 C.F.R. pt. 825). The final rule takes effect March 27, 2015. *Id.* at 9989.

As the Department of Labor explained during the rulemaking process, a major consequence of this rule change is that persons validly married to persons of the same sex will be eligible for the unpaid spousal leave guaranteed under the FMLA even if they reside in a state

whose laws do not recognize marriages of same-sex couples. *See* 80 Fed. Reg. at 9991. The agency noted that the change would "ensure that all legally married couples, whether opposite-sex or same-sex, will have consistent federal family leave rights regardless of where they live," *id.*, which would promote worker mobility and ease compliance for employers, *see id.* at 9992.

## II.     Texas's complaint and motion for preliminary injunction

On March 18, 2015, Texas filed this suit challenging the February 2015 rule. Compl. for Declaratory and Injunctive Relief, ECF No. 1. Texas raises claims under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, and seeks relief under the APA and the Declaratory Judgment Act, 28 U.S.C. § 2201. Compl. ¶¶ 25–40. The complaint alleges that the February 2015 rule violates the full faith and credit provision of the federal Defense of Marriage Act, 28 U.S.C. § 1738C, violates principles of federalism, invalidly preempts state law, violates the separation of powers, invalidly commandeers state authority, improperly abrogates state sovereign immunity, and conflicts with the FMLA. Compl. ¶¶ 16–22, 28–31, 35, 38–40. The complaint asks the Court to set aside the rule, declare the rule unlawful, and enter a permanent injunction preventing the Department of Labor from implementing the rule. Compl. 16–17.

Texas included with its complaint a motion seeking a preliminary injunction enjoining "the application of" the February 2015 rule and enjoining it "from taking effect on March 27, 2015." Appl. for TRO and Prelim. Inj. / Stay of Administrative Proceedings ¶¶ 1, 11, ECF No. 1.[1]

## ARGUMENT

## I.      Standards for entry of a preliminary injunction

"A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to

---

[1] Texas's application and other papers also mentioned a request for a temporary restraining order, but Texas has clarified that it is seeking a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, and is not seeking a temporary restraining order under Rule 65(b). *See* Br. in Resp. to Rule 65(b) Order 2, ECF No. 7.

succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is 'an extraordinary remedy' which should only be granted if the party seeking the injunction has 'clearly carried the burden of persuasion' on all four requirements." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). "[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue . . . ." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).[2]

II.    **Texas has not shown that it is likely to succeed on the merits because its suit fails the jurisdictional requirements of standing and ripeness and fails to state a valid claim for relief.**

A.    **The Court lacks subject matter jurisdiction over Texas's claims.**

1.    This case presents serious questions of subject matter jurisdiction, which weighs against entry of preliminary relief.

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994), and a plaintiff in federal court bears the burden of establishing that the court's exercise of jurisdiction is within the bounds of the Constitution and is authorized by statute. *See id.* Serious questions regarding a court's subject matter jurisdiction weighs against entry of a preliminary injunction, because "potential impediments to even reaching the merits" make a plaintiff's claims less likely to succeed. *Munaf v. Geren*, 553 U.S. 674, 690 (2008).

2.    Texas's suit fails the jurisdictional requirements of standing and ripeness.

Texas's suit fails the jurisdictional requirements of standing and ripeness.

---

[2] Texas did not comply with the conference and certification requirements of Local Rule 7.1(a), (b), and (h) when filing its motion. Texas also has not made a request to be excused from the requirements of the rule or cured its failure to comply.

Article III of the Constitution restricts the subject matter jurisdiction of the federal courts to specific "'cases' and 'controversies'" and prevents courts from taking action in matters better suited to legislative or executive action. *Allen v. Wright*, 468 U.S. 737, 750 (1984). One manifestation of the "case or controversy" limitation is the requirement of "standing." Standing requires the plaintiff to establish three elements:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

An abstract disagreement about the wisdom or legality of a federal policy is not the kind of "concrete and particularized" injury needed to meet the "injury in fact" requirement. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998) (noting that "vindication of the rule of law" is not the kind of interest that can support standing). To establish standing, Texas would need to show that it in fact has a "concrete plan[]" to take action that would be prohibited under the February 2015 rule. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

In its capacity as an employer, Texas has failed to establish a "case" or "controversy" under Article III of the Constitution because it has not alleged or shown that it has any immediate plan to deny a request for leave from an employee who needs to care for a seriously ill same-sex spouse. Nor has it identified any official policy, practice, or requirement for denying leave to employees who wish to care for ill same-sex spouses. In fact, Texas has not even alleged that it employs any person who is married to a person of the same sex and might seek leave under the FMLA, or that it has the desire or the means to inquire into the sex of employees' spouses when employees request such leave. Without having made such allegations, any conflict between the February 2015 rule and Texas's employment policies is purely hypothetical. Thus,

8

this action should be dismissed for lack of subject matter jurisdiction.

Texas also may not invoke the interests of Texas private employers to establish standing. "A State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923), and *Missouri v. Illinois*, 180 U.S. 208, 241 (1901)). "It is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the Federal Government. . . . [I]t is the United States, and not the State, which represents [citizens] as *parens patriae* when such representation becomes appropriate . . . ." *Mellon*, 262 U.S. at 485–86. Thus, while states may sue private entities on behalf of their citizens, they may not "institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof." *Id.* at 485; *see also Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (explaining that *Mellon* prohibits "allowing a State" to file a lawsuit "'to protect her citizens from the operation of federal statutes'").

In any event, Texas has not identified any Texas private employer that is subject to FMLA and intends to deny a request for leave in a manner that conflicts with the February 2015 rule. It would be improper for this Court to adjudicate the rights of a hypothetical Texas firm in a hypothetical situation; that is precisely the kind of academic exercise that Article III forbids.

For similar reasons, Texas's claims fail to meet the related jurisdictional requirement of ripeness. "[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [Administrative Procedure Act] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). No concrete

situation has emerged that would permit the Court to evaluate Texas's claims in terms of specific facts rather than abstract principles—for example, a civil action brought by an employee whose request for leave was denied. There is also no ripe dispute about Texas's sovereign immunity, as that issue would only arise in a suit by a private citizen against Texas.

       3.   Federal courts cannot hear suits brought by state authorities seeking to establish that their own laws are not preempted by federal law.

Texas's claim that the February 2015 rule invalidly preempts Texas state law, Compl. ¶¶ 20–22, 31, falls outside this Court's subject matter jurisdiction. The Supreme Court has made clear that state authorities may not file suit in federal court to establish that state laws are not preempted.

Texas's arguments regarding preemption are entirely misplaced because, as detailed elsewhere in this brief, the February 2015 rule does not purport to interfere with Texas state marriage law in any way. But in any event, the Supreme Court held in *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), that federal courts lack jurisdiction to hear suits brought by state authorities seeking to establish that their own regulations are not preempted by federal law. *See id.* at 20–22. The Court, "'with an eye to practicality and necessity,' refused to allow a state to sue for a declaration that federal law did not preempt its regulations, because states 'have a variety of means by which they can enforce their own laws in their own courts.'" *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999) (citation omitted) (quoting and summarizing *Franchise Tax Board*).[3]

---

[3] Texas's complaint references the Declaratory Judgment Act, 28 U.S.C. § 2201, but that statute does not establish subject matter jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) ("[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'").

**B.**     **Texas's complaint fails to state any valid claim for relief.**

1.  All of Texas's several claims are flawed because the challenged rule does not disturb or purport to disturb the Texas law of marriage; it only fine-tunes the operation of the federal Family and Medical Leave Act.

Texas raises several distinct claims that will each be discussed more specifically in the sections below. But at the core of all of Texas's claims is a fundamental misunderstanding of the challenged rule, its effects, and what it requires of state authorities. The February 2015 rule does not disturb or interfere with the Texas law of marriage, or the enforcement or application of that law, in any way. The February 2015 rule does no more than fine-tune a specific, exclusively federal-law issue: how to determine an employee's eligibility for the federal spousal leave guaranteed under the federal Family and Medical Leave Act given that the state where an employee was married, the state where he or she lives, and the state where he or she works may differ. The February 2015 rule has no effect on state law and therefore simply does not implicate the various federalism issues that Texas raises.

The February 2015 rule does not alter any individual's marital status as a matter of Texas law or, for that matter, the law of any other state. Persons who are married under Texas law the moment before the rule takes effect will remain married under Texas law after it takes effect. Likewise, persons who are not married under Texas law before the rule takes effect still will not be married under Texas law after the rule takes effect. The February 2015 rule also does not require Texas authorities to treat any individual as married under Texas law for any purpose. All that the February 2015 rule does is establish that an employee who is validly married under the law of another state is entitled to the spousal family and medical leave benefits guaranteed under the federal FMLA even if he works or resides in another state where his marriage is not recognized. So if a person is married in Utah but lives in Oklahoma and works in Texas, the February 2015 rule looks to Utah law to determine his entitlement to spousal leave under the

11

FMLA, whereas the prior rule would have looked to Oklahoma law.

The February 2015 rule has no effect beyond the narrow issue of an employee's entitlement to leave under the FMLA. Because the February 2015 rule operates only in a narrow, exclusively federal realm and has no effect at all on state law or the enforcement of state law, Texas's various federalism-related challenges to the rule are simply off base, as the defendants discuss further in the sections below.[4]

In any event, any assertion of a conflict between the February 2015 rule and Texas's marriage laws fails because Texas's ban on recognizing out-of-state marriages of same-sex couples is unconstitutional. As the Government has explained in a set of cases pending in the Supreme Court that challenge similar bans, denying marriage recognition to lawfully married same-sex couples violates the Equal Protection Clause. *See* Brief for the United States as Amicus Curiae Supporting Petitioners, *Obergefell v. Hodges*, Nos. 14-556, 14-562, 14-571, 14-574 (U.S.); *De Leon v. Perry*, 975 F. Supp. 2d 632, 666 (W.D. Tex. 2014), *appeal docketed*, No. 14-50196 (5th Cir. Mar. 1, 2014).

>    2.  *United States v. Windsor* does not support Texas's claims; if anything, *Windsor* weighs against Texas.

Texas relies heavily on *United States v. Windsor*, 133 S. Ct. 2675 (2013), but *Windsor* provides no support for Texas's claims. *Windsor* reaffirmed that the regulation of marriage has by history and tradition been reserved to the states, but it also reaffirmed that federal laws that draw lines based on marriage do not necessarily need to track state-law definitions of marriage.

The Supreme Court held in *Windsor* that DOMA section 3 violated the Due Process

---

[4] It also bears noting that although Texas appears to contend that the February 2015 rule cannot validly be applied either to the state government or to Texas private employers, most of the federalism-based arguments Texas has presented relate exclusively to the state government. Thus, Texas's arguments are flawed with respect to the state government, and nonexistent with respect to Texas private employers.

Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment because its "purpose and effect" was "to disparage and to injure those whom the State [of New York], by its marriage laws, sought to protect in personhood and dignity." 133 S. Ct. at 2696. The Court noted the long tradition of state regulation of marriage and observed that DOMA section 3 represented an unusual attempt by the Federal Government to undermine a state's legislative decision to "enhance[] the recognition, dignity, and protection" of a class of persons, in this case same-sex couples. *Id.* at 2692; *see id.* at 2693 ("DOMA seeks to injure the very class New York seeks to protect.").

The February 2015 rule does not have the characteristics that made DOMA section 3 invalid. While DOMA section 3 offended equal protection principles by injuring persons whom the state had sought to protect, here there is no discrete group whom Texas seeks to protect through its opposition to the February 2015 rule. On the contrary, Texas is seeking to be left free to injure a group that will be protected under the February 2015 rule. And while DOMA section 3 reached "over 1,000 federal statutes and the whole realm of federal regulations," *Windsor*, 133 S. Ct. at 2690, the February 2015 rule reaches just one narrow area of federal law: entitlement to leave under the FMLA.

If anything, *Windsor* supports the validity of the February 2015 rule. The Court in *Windsor* reaffirmed "the constitutionality of limited federal laws that regulate the meaning of marriage in order to further federal policy." *Id.* at 2690. The Court noted that "Congress, in enacting discrete statutes, can make determinations that bear on marital rights and privileges. . . . When the Federal Government acts in the exercise of its own proper authority, it has a wide choice of the mechanisms and means to adopt. Congress has the power both to ensure efficiency in the administration of its programs and to choose what larger goals and policies to pursue." *Id.*

The Court gave examples of several federal statutes that prescribed marriage-based rules that did not correspond perfectly with state-law definitions of marriage. *See id.* The lesson to be drawn from this discussion in *Windsor* is that defining the term "spouse" in one federal statute is not the same as defining or regulating marriage.

3.   The February 2015 rule comports with 28 U.S.C. § 1738C, because the rule does not require Texas to "give effect" to any marriage.

The February 2015 rule accords with section 2 of the Defense of Marriage Act, 28 U.S.C. § 1738C, because it does not require Texas to "give effect" to any marriage within the meaning of § 1738C. As used within the statute, the phrase "give effect" does not encompass any action short of a state, in its sovereign capacity, granting full legal recognition to another state's acts under the Full Faith and Credit Clause of the Constitution, U.S. Const. art. IV, § 1. When a state agency, acting purely in its capacity as an employer, merely takes into account an out-of-state marriage for the limited purpose of analyzing an employee's rights under the federal FMLA, it is not "giv[ing] effect" to that out-of-state marriage in the sense of full legal recognition.

Section 2 of the Defense of Marriage Act, 28 U.S.C. § 1738C, provides:

§ 1738C. Certain acts, records, and proceedings and the effect thereof.

No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.

*Id.*

Texas asserts that the February 2015 rule violates this provision because it forces Texas to "give effect" to another state's marriage when it approves an employee's request to take leave under the FMLA. But the legislative history of § 1738C suggests that Congress did not intend the phrase "give effect" to be interpreted so broadly.

A House Judiciary Committee report on the Defense of Marriage Act demonstrates that § 1738C was intended to operate narrowly. Defense of Marriage Act, H.R. Rep. No. 104-664, at 25 (1996) ("The Committee would emphasize the narrowness of this provision."). The report explains that the provision is concerned "exclusively" with attempts to obtain "full legal recognition" of marriages of same-sex couples under the Full Faith and Credit Clause of the Constitution. H.R. Rep. No. 104-664, at 25; *see also id.* at 25–26. Thus, the term "give effect" in § 1738C should be construed narrowly as referring, at most, to giving a marriage "full faith and credit," that is, according the marriage full effect within the state's own legal system. *See* H.R. Rep. No. 104-664, at 26 (explaining that the general constitutional rule of "full faith and credit" involves states treat[ing] laws of other States *as they would their own*" (emphasis added)).

Section 2 of DOMA therefore does not protect a state government, acting in its capacity as an employer, from having to comply with a federal regulation that draws regulatory lines based on other states' laws. When Texas authorities grant leave to their employees that is mandated by the FMLA, they are not "giv[ing] effect" to any state's marriages within the meaning of the Full Faith and Credit Clause of the Constitution or § 1738C. Indeed, they are not even "giv[ing] effect" to the FMLA and its implementing regulations. They are merely complying with the FMLA and the implementing regulations in their capacity as employers. *See also infra* pp. 16–17 (discussing case law drawing a distinction between state governments acting as employers and state governments acting as sovereigns).

Section 2 of DOMA certainly does not mandate any specific definition of the term "spouse"—the now-invalidated section 3 of DOMA controlled how the term "spouse" was defined, so it would have made no sense for section 2 to do so as well. And nothing in DOMA or the FMLA requires the Department of Labor to employ a place-of-residence rule in the definition

of the term "spouse." "Congress knows how" to set a specific rule "where it desires to do so," *Astrue v. Ratliff*, 130 S. Ct. 2521, 2527 (2010). *See, e.g.*, 42 U.S.C. § 416(h)(1)(A)(i) (specifying a place-of-residence rule for certain spousal benefits under the Social Security Act).

        4.   The February 2015 rule does not unlawfully commandeer state authority.

The February 2015 regulation also does not commandeer Texas state authorities in the implementation of federal policy. In requiring state governments to comply with the same guaranteed leave requirements applicable to other covered employers, the FMLA does not commandeer any state's authority to regulate its own citizens. Rather, the FMLA merely regulates the activities of state government entities in their capacity as employers. The Supreme Court has held that such regulation does not implicate the Tenth Amendment.

Congress does not run afoul of the Tenth Amendment when it merely "'regulate[s] state activities,' rather than 'seek[ing] to control or influence the manner in which States regulate private parties.'" *Reno v. Condon*, 528 U.S. 141, 150 (2000) (second alteration in original) (quoting *South Carolina v. Baker*, 485 U.S. 505, 514–15 (1988)). Congress may appropriately regulate the states as employers participating in "the national labor market." *United States v. Miss. Dep't of Pub. Safety*, 321 F.3d 495, 500 (5th Cir. 2003); *see also City of Abilene v. U.S. EPA*, 325 F.3d 657, 663 (5th Cir. 2003) (discussing *Condon* and concluding that the application of environmental standards to municipal authorities would not violate the Tenth Amendment). Accordingly, the Supreme Court has rejected Tenth Amendment challenges to the application of general federal regulatory statutes to state entities. *See, e.g.*, *Garcia v. San Antonio Metro Transit Auth.*, 469 U.S. 528, 554 (1985) (holding that applying federal labor laws to a state transit authority was not "destructive of state sovereignty or violative of any constitutional provision"). The FMLA and the February 2015 rule place demands on states only in their capacity as employers, and not "in their *sovereign* capacity," *Condon*, 528 U.S. at 151 (emphasis added).

Accordingly, they raise no Tenth Amendment concerns.

This case is not like *New York v. United States*, 505 U.S. 144 (1992), where Congress "commandeered the state legislative process by requiring a state legislature to enact a particular kind of law," *Condon*, 528 U.S. at 149 (discussing *New York*). It also is not like *Printz v. United States*, 521 U.S. 898 (1997), where Congress "commanded 'state and local enforcement officers to conduct background checks on prospective handgun purchasers,'" *Condon*, 528 U.S. at 149 (discussing *Printz*). The FMLA and its regulations do not require state legislatures "to enact any laws or regulations," or "require state officials to assist in the enforcement of federal statutes regulating private individuals," *id.* at 151. The mere possibility that state government employees may need to expend time and resources to comply with the FMLA and the February 2015 rule is not the kind of conscription of state authority that raises constitutional concerns. *See id.* at 150 (finding that federal regulations requiring "time and effort on the part of state employees" did not raise the same concerns as the schemes that were invalidated in *New York* and *Printz*).

> 5. The Supreme Court has already held that the family-care provisions of the FMLA and the FMLA's policy of universal guaranteed leave are valid under Congress's authority to enforce the Fourteenth Amendment.

Texas's argument based on state sovereign immunity is foreclosed by *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), in which the Supreme Court upheld the family-care provisions of the FMLA—the same provisions at issue in this case—as a valid exercise of Congress's authority under section 5 of the Fourteenth Amendment. *Hibbs* conclusively established that the family-care provisions of the FMLA validly abrogate state sovereign immunity.

Congress may abrogate a state's sovereign immunity when it enacts a statute under section 5 of the Fourteenth Amendment, which empowers Congress to "enforce" the demands of the Fourteenth Amendment through "appropriate legislation." U.S. Const. amend. XIV § 5.

Congress's power under section 5 includes "authority both to remedy and to deter violation of rights guaranteed" under the Fourteenth Amendment, so Congress may use the section 5 power to enact legislation that "prohibit[s] a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Hibbs*, 538 U.S. at 727 (quoting *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001)). However, the Supreme Court has held that "[v]alid § 5 legislation must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Hibbs*, 538 U.S. at 728 (quoting *City of Boerne v. Flores*, 521 U.S. 507 (1997)).

In *Hibbs*, the Supreme Court held that Congress's abrogation of state sovereign immunity in the family-care provisions of the FMLA was a valid exercise of section 5 power. The Court found that Congress had acted based on a "record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits" by state governments, *id.* at 735, and it concluded that the family-care provisions of the FMLA were "congruent and proportional" to the targeted violations of the Fourteenth Amendment. *Id.* at 737. This Court, of course, is not free to overrule that holding.

In *Neinast v. Texas*, 217 F.3d 275 (5th Cir. 2000), the Fifth Circuit held that when an administrative agency issues a regulation implementing a statute that was enacted based on section 5, the regulation "must be proportional and congruent to the relevant constitutional wrongs identified by Congress." *Id.* at 281. It is not clear that the requirement established in *Neinast* applies to the February 2015 regulation, since the February 2015 regulation is markedly different from the regulation at issue in *Neinast*. The regulation at issue in *Neinast* carved out a new rule prohibiting public entities from charging fees to individuals with disabilities to cover the costs of measures required under the Americans with Disabilities Act. The February 2015

regulation, by contrast, merely refines the definition of a term employed in the FMLA.

Assuming that *Neinast* is applicable, however, the February 2015 regulation is proportional and congruent to the pattern of discrimination against women in the workplace that justified the enactment of the FMLA. In *Hibbs*, the Court observed that Congress's strategy in enacting the FMLA was to "set[] a minimum standard of family leave for *all* eligible employees, irrespective of gender," in hopes that establishing such a universal minimum standard would undermine the "stereotype that only women are responsible for family caregiving" and counteract perceptions that men make better employees because they are less likely to take family leave. *Hibbs*, 538 U.S. at 737. In other words, the FMLA sought to combat discrimination against women "by creating an across-the-board, routine employment benefit for all eligible employees," including men as well as women. *Id.* The Court in *Hibbs* found that this strategy met the section 5 congruence-and-proportionality test. *Id.*

The modified definition of the term "spouse" in the February 2015 rule is in keeping with the remedial strategy that the Court approved in *Hibbs*, that of making family leave universal. The February 2015 rule helps ensure that spousal-care leave remains an "across-the-board, routine employment benefit for all eligible employees," rather than a benefit restricted to certain classes of employees. The February 2015 rule is therefore justified based on the same reasoning that justified the FMLA in *Hibbs*.

It makes no difference that the purpose of the FMLA was to address unequal treatment of women, not to address unequal treatment of same-sex spouses. What matters is that inclusion of same-sex spouses on equal terms with other employees in the FMLA advances Congress's remedial strategy of guaranteeing leave for "*all* eligible employees," *Hibbs*, 538 U.S. at 737. Indeed, the plaintiff in *Hibbs* was not a woman—the plaintiff was a man who had sought spousal

leave to care for his ailing wife. *Id.* at 725.

> 6. The plaintiff's preemption-related arguments are misplaced because the February 2015 rule does not purport to preempt or otherwise displace Texas state marriage law.

As explained earlier, this Court lacks jurisdiction to consider Texas's request for an order declaring that Texas laws are not validly preempted by federal law, Compl. ¶¶ 20–22, 31. In any event, there is no preemption issue here because Texas law and the February 2015 rule are compatible with one another. As explained above, *see supra* pp. 11–12, the February 2015 rule does not purport to reconfigure or displace Texas law regarding marriage. The rule merely defines the term "spouse" in one exclusively federal statute, leaving the law of Texas and every other state intact. Texas law also does not conflict with the FMLA. Texas has not pointed to anything in state law that prevents Texas state offices from granting the modest unpaid leave required by the FMLA.

> 7. The February 2015 rule does not enlarge federal court jurisdiction.

Texas also argues that the February 2015 rule improperly enlarges federal court jurisdiction because a federal court hearing a suit under the FMLA would need to "determine whether the claimant is actually married," which Texas contends a court cannot do. Compl. ¶¶ 19, 30. But the February 2015 rule does not give rise to any new need to make legal determinations regarding whether a claimant is actually married—a claimant's marital status can arise as an issue no matter how the term "spouse" is specifically defined. And federal courts have never been prohibited from inquiring into whether individuals are actually married—issues of marital status arise in countless contexts, from issues of spousal privilege to taxation issues to entitlement to Social Security benefits. The general federal question statute, 28 U.S.C. § 1331, provides authority for a federal court to hear a claim arising under a federal statute such as the FMLA, and that includes authority to examine issues of marital status that might be pertinent

such a claim. Federal courts are generally prohibited only from taking certain actions directly interfering with domestic relations, such as issuing "divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992), *cited in United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013).

8.   The February 2015 rule does not conflict with the FMLA.

The February 2015 rule also does not conflict with the FMLA. Congress did not specify in the FMLA how spousal-leave rights are to be determined if the state where the employee was married, the state where he or she lives, and the state where he or she works are not all the same. That left a gap for the Labor Department to fill, and the February 2015 rule fills that gap in a reasonable way that promotes the FMLA's purpose of establishing universal minimum standards for employee leave. *See Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 866 (1984).

## III.   Texas has not shown that preliminary relief is needed to prevent irreparable harm.

Texas has failed to meet its burden of demonstrating that it is likely to suffer irreparable harm absent an order enjoining the February 2015 rule. The Supreme Court has made clear that a preliminary injunction cannot be entered based on a mere "possibility" of irreparable harm; rather, a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff must "demonstrate that irreparable harm is real, imminent, and significant—not merely speculative or potential—with admissible evidence." *Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*, 779 F. Supp. 2d 542, 574 (W.D. Tex. 2011). Texas fails to meet that standard in multiple respects.

As an initial matter, Texas does not provide sufficient evidence to support any finding of harm. *See, e.g.*, *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) ("The plaintiff has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction."); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D.

Tex. 2012); *Aquifer Guardians*, 779 F. Supp. 2d at 556. It relies only on four paragraphs in its complaint and preliminary injunction application alleging harm in a conclusory fashion, Compl. ¶¶ 23–24; Appl. for Prelim. Inj. ¶¶ 4–5, and a cursory declaration by an employee of the Office of the Attorney General that simply states that the facts alleged in the complaint and application for injunctive relief are true and correct, without explaining the basis for the employee's statements. Decl. of Brantley Starr ¶ 2, ECF No. 1.[5]

Even if Texas's allegations could be accepted without evidence to support them, Texas's allegations do not describe the kind of "real, imminent, and significant" irreparable harm required to justify entry of a preliminary injunction, *Aquifer Guardians*, 779 F. Supp. 2d at 574. Texas first alleges that it is harmed because state officials are forced to choose between complying with the February 2015 rule or complying with Texas law. Appl. for Prelim. Inj. ¶ 4. That is simply not the case. As discussed above, the FMLA does not interfere with Texas state law and does not demand anything from Texas in its capacity as a sovereign; rather, it simply governs relations between employers—including state agencies acting in their capacity as employers—and employees concerning family and medical leave. *See supra* pp. 11–12, 16–17.

Texas cites *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 734 F.3d 406 (5th Cir. 2013), in which the Fifth Circuit found that an injunction against operation of a state statute would cause irreparable harm because "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Id.* at 419, *cited in* Compl. ¶ 23; Appl. for Prelim. Inj. ¶ 4. *Planned Parenthood* is not apposite here because in this case, Texas's prohibition of marriage between persons of the same

---

[5] Texas should not be permitted to introduce new arguments or evidence in its reply brief. *See, e.g.*, *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 633 n.11 (N.D. Tex. 2010).

sex is not "enjoined" by the February 2015 rule, and the February rule has no effect on Texas's own enforcement of its laws in its sovereign capacity. The February 2015 rule affects Texas only in its capacity as an employer and only as a matter of federal law.

In any event, there is no credible suggestion that any Texas state agency faces any kind of dilemma as a factual matter. For one, Texas makes no allegation that any of its agencies has received or is about to receive a request for spousal-care leave from an employee who is married to a spouse of the same sex, and its complaint identifies no employee with a pending—or even likely—request for spousal-care leave. It is not enough that it is merely conceivable that Texas could some day receive a request. To establish irreparable harm, a plaintiff must show harm that is more than merely speculative or conjectural—it must be "real, imminent, and significant." *Aquifer Guardians*, 779 F. Supp. 2d at 574. Texas plainly falls far below the burden it bears.

Nor is that the only factual problem with Texas's irreparable-harm assertion. Texas has not established that complying with the February 2015 rule would require any changes to its current practices. The FMLA only imposes a modest requirement that an employer provide unpaid leave, and Texas has not pointed to anything in state law that would require Texas to deny unpaid leave to an employee simply because the purpose for that leave is to care for a spouse of the same sex. Texas also has not produced evidence that it has any policy of denying unpaid leave in such situations.

Furthermore, even if the possibility of having to grant leave to an employee based on an out-of-state marriage could amount to irreparable harm, that possibility already exists under the previous place-of-residence rule. Under the place-of-residence rule, Texas would need to look to the law of another state to determine the leave rights of a Texas state employee who works for the Texas state government but resides in a neighboring state. That matters here because Texas

23

shares a border with two states—New Mexico and Oklahoma—that now recognize marriages of same-sex couples.

Texas also suggests that it will suffer irreparable harm under the February 2015 rule because state offices will have to "research and apply marriage law—including the common-law of marriage—of other States" in considering requests for spousal leave. Appl. for Prelim. Inj. ¶ 5. This is baseless. Texas has not even asserted, let alone shown through evidence, that it has a practice of screening employee requests for spousal-care leave to verify that employees requesting leave are actually married and that their marriages are recognized under Texas law. Moreover, with respect to employees who are Texas residents, applying the February 2015 place-of-celebration rule will actually entail *less* work than applying the prior place-of-residence rule. That is because Texas generally recognizes other states' marriages under the Full Faith and Credit Clause of the Constitution, and its nonrecognition of marriages between persons of the same sex is an exception to that general rule. To determine whether an employee qualifies for spousal-care leave under the February 2015 place-of-celebration rule, a Texas state office will only need to answer one question: whether the employee is in a marriage that is recognized either in Texas or in some other state. To determine whether an employee qualified under a place-of-residence rule, a Texas state office would still have to answer that same question, and it would have to take the additional step of investigating whether the employee's spouse is of the same sex or the opposite sex. In any event, a minor administrative burden is not a "significant" harm. Texas has plainly failed to show that an injunction is needed to prevent irreparable harm.

## IV.   Texas has not shown that the balance of equities tips in its favor or that an injunction is in the public interest.

Finally, Texas has failed to establish that the asserted harms to its interests outweigh the threatened harm the requested injunction would cause the United States and unrepresented third

parties, and that granting the injunction would not be "adverse to public interest." *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986). Here, the balance of equities and the public interest weigh substantially against the preliminary injunction requested by Texas.

As set forth in section III above, Texas has not shown that it will suffer any irreparable harm if the Court denies its request for a preliminary injunction. By contrast, preventing the February 2015 rule from taking effect would frustrate the expansion of FMLA leave eligibility to encompass employees who are not covered under the existing rule but face an urgent need to care for loved ones. This specific, imminent harm clearly outweighs the minimal potential harm alleged by Texas.

By the same token, Texas has failed to demonstrate how an order preliminarily enjoining the February 2015 rule would promote the public interest. Perhaps understandably, Texas has not even tried to argue that it would serve the public interest to forbid a state employee from taking unpaid leave to tend to a seriously ill or dying spouse. Instead, Texas has merely suggested that it would serve the public interest to allow it to "carry out the longstanding statutory policy of the Legislature." Appl. for Prelim. Inj. ¶ 9. But whatever abstract interest may be at stake, it cannot outweigh the public interest in preventing similarly situated state employees from being treated differently from one another, in very substantial ways, based only on the sex of the persons to whom they are lawfully married.

## CONCLUSION

Because Texas has not shown any likelihood of success on the merits, has not demonstrated any possibility of irreparable harm, and has failed to establish the other factors necessary to justify preliminary relief, Texas's motion for a preliminary injunction should be denied.

Date: March 23, 2015                    Respectfully submitted,

                                        BENJAMIN C. MIZER
                                        Acting Assistant Attorney General

                                        JOHN R. PARKER
                                        Acting United States Attorney

                                        JUDRY L. SUBAR
                                        Assistant Branch Director

                                        s/ JAMES C. LUH
                                        CHRISTOPHER R. HALL
                                        JAMES C. LUH (N.Y. Bar)
                                        Trial Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Ave NW
                                        Washington DC 20530
                                        Tel: (202) 514-4938
                                        Fax: (202) 616-8460
                                        E-mail: James.Luh@usdoj.gov
                                        Attorneys for Defendants