IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| STATE OF TEXAS § | |
| § | |
| STATE OF ARKANSAS § | |
| § | |
| STATE OF LOUISIANA § | |
| § | |
| STATE OF NEBRASKA § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 7:15-cv-56 |
| § | |
| UNITED STATES OF AMERICA, § | |
| UNITED STATES DEPARTMENT § | |
| OF LABOR, and THOMAS E. PEREZ, § | |
| in his Official Capacity as § | |
| SECRETARY OF LABOR, § | |
| § | |
| Defendants. § | |

**REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARYINJUNCTION/STAY OF
ADMINISTRATIVE PROCEEDINGS**

The Department's rule is the latest example of the aggressive aggrandizement of executive power through administrative action that has become all too common lately.[1]

The Department's new, place-of-celebration definition of the term "spouse" in the FMLA requires Plaintiff State employers to grant leave based on out-of-state same-sex marriages, a mandate that necessarily requires interpreting and applying the marriage laws of other States and other countries. 80 Fed. Reg. 37, at 9989-10001 ("Final Rule" or "Rule"). That is undisputed. *See* Doc. 11 at 5–6.

The main thrust of the Department's response is its insistence that the Rule "does not interfere in any way with the Texas law of marriage or Texas's enforcement of its own laws." *Id.* at 1, 11. That assertion—that the Plaintiff States do not understand their own laws—should be rejected, especially when the Department did not cite a single provision of Texas law to support its argument.

The application for temporary relief explains that the Final Rule creates an irreconcilable conflict with State law, which declares all out-of-state same-sex marriages "void," and forbids the State to "give effect to" a "right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction." TEX. FAM. CODE

---

[1] *See, e.g., Texas v. United States*, No. CIV. B-14-254, 2015 WL 648579, at *62 (S.D. Tex. Feb. 16, 2015) (enjoining implementation of an administrative program "that awards legal presence and additional benefits to the four million or more" illegal aliens); *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014) (rejecting EPA's interpretation of the Clean Air Act in part "because it would bring about an enormous and transformative expansion in EPA's regulatory authority without clear congressional authorization").

§ 6.204(b). Granting leave due to an out-of-state same-sex marriage falls squarely within that statutory prohibition. Thus, absent a temporary restraining order or preliminary injunction, on Friday, March 27, Plaintiff State employers will be forced to decide whether to comply with Texas law or the Department's regulation. Equally harmful to Texas is the Rule's invalid encroachment on the State's sovereignty.

## I.   The Plaintiff States have demonstrated a likelihood of success on the merits.

As the Plaintiff States demonstrated in the complaint and application, they are likely to prevail on the merits of their claims. The Rule is invalid because it requires Plaintiff States, as employers, to follow the laws of other States and foreign countries while violating their own State laws, and it also interferes with the Plaintiff States' sovereign authority to enforce their own laws. The Plaintiff States have standing to redress these injuries and their claims are ripe because the injury is imminent.

### A.   Plaintiff States have properly invoked the Court's subject matter jurisdiction and stated valid claims for relief.

The Department's response repeatedly asserts that the Rule "does not interfere in any way with the Texas law of marriage or Texas's enforcement of its own laws." Doc. 11 at 1, 11. But the Department admits that, under the Final Rule, "persons validly married to persons of the same sex will be eligible for the unpaid spousal leave guaranteed under the FMLA even if they reside in a state whose laws do not recognize marriages of same-sex couples." *Id.* at 5-6. The Department cannot explain how this change to the FMLA's definition of "spouse" is not an affront to the laws of States like Texas, Arkansas, Louisiana, and

Nebraska that prohibit recognition of or giving effect to out-of-state same-sex marriages. *See* Doc. 14 at 7-9 (listing applicable State laws).

This clear conflict gives the Plaintiff States standing to challenge the Final Rule. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Plaintiff States have suffered an injury in fact because the Department's new definition of "spouse" interferes with the States' enforcement of their own laws. *Id.* As explained in the application, the Rule creates an irreconcilable conflict with State law, which does not allow State agencies to "give effect to" a "right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction." TEX. FAM. CODE § 6.204(b). Granting leave due to an out-of-state same-sex marriage is prohibited under the statute.

Further, the sovereign Plaintiff States have a legally protected interest in "the exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982).[2] Thus, the Plaintiff States has standing to challenge federal interference with their sovereign interest in enforcing their laws. "Federal regulatory action that preempts state law creates a sufficient injury in fact to satisfy this prong." *Wyoming ex rel.*

---

[2] *See also Maine v. Taylor*, 477 U.S. 131, 137 (1986) (recognizing a State's standing because "a State clearly has a legitimate interest in the continued enforceability of its own statutes"); *Castillo v. Cameron Cnty., Tex.*, 238 F.3d 339, 351 (5th Cir. 2001) (concluding that the State had standing to appeal a federal court injunction allowing violation of state law "[b]ecause the State has a sovereign interest in enforcing its laws" even though the federal action did not require the State "to perform or refrain from performing any particular acts").

*Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) (concluding that Wyoming had standing to challenge a federal agency's regulation that effectively preempted state law); *see also Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989); *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir.1985).

The Plaintiff States also have standing under *Massachusetts v. EPA*, 549 U.S. 497 (2007). In *Massachusetts*, the Supreme Court held that the State had Article III standing to sue a federal agency for failing to regulate greenhouse gases based on a string of inferences. The Court emphasized that States are owed "special solicitude in our standing analysis." *Id*. at 520; *see also id*. at 518 (noting "the special position and interest of Massachusetts"). The harm from the Department's rewrite of the FMLA's "spouse" definition is more concrete than the generalized and attenuated harm that was sufficient to support standing in *Massachusetts* for at least two reasons. First, the Department's action directly conflicts with the Plaintiff States' ability to enforce their own laws. Second, it puts the Plaintiff States and their political subdivisions as employers to a difficult choice: expend resources changing leave policies and researching other States and foreign countries' marriage law to comply with the Department's rule or follow State law and face a host of expensive and time-consuming lawsuits. Either of those serious harms is sufficient to establish standing.

The causation and redressability prongs of *Lujan*'s standing test are also easily satisfied. *Lujan*, 504 U.S. at 560–61. Causally, the Department promulgated the regulation that effectively rewrote the definition of "spouse" in the FMLA and will harm the Plaintiff States on March 27. And the Plaintiff States' injury is redressable because a

favorable decision would prevent the Department's interference with their enforcement of State laws and would remove the Hobson's choice facing State employers.

The Department also asserts that the Plaintiff States have not pleaded a "case" or "controversy" because they have not shown any immediate plan to deny a request for leave from an employee based on the Final Rule. Doc. 11 at 8. It also argues, for the same reasons, that the Plaintiff States' claims are unripe. *Id.* at 9. However, the controversy facing the Plaintiff States' agencies is real and not merely an "abstract disagreement about the wisdom or legality of a federal policy. . . ." *Id.* at 15 (citing *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 106–07 (1998)). State agencies will have to rewrite their internal FMLA policies to change the definition of "spouse" that is consistent with State law to mirror the definition in federal rule. *See, e.g.,* Doc. 14 at 14–15. The Department would have Plaintiff State agencies violate the federal rule and subject themselves to civil suit under the FMLA before allowing the Plaintiff States to come into court to contest the validity of the Final Rule. Standing does not require a past injury; rather it requires an imminent, particularized injury. *Lujan*, 555 U.S. at 560.

Finally, the Department argues that the Court lacks jurisdiction to hear this suit seeking to establish that the Plaintiff States' laws are not preempted by federal law. Doc. 11 at 10. The Department misunderstands the Plaintiff States' argument; it is not that the Rule does not preempt State law, but rather that the Rule is invalid because it illegally attempts to preempt State law. Doc. 14 at 12–13, 16–17. Accordingly, *Franchise Tax Board of California v. Construction Laborers*

*Vacation Trust*, 463 U.S. 1 (1983), is inapplicable. The Court has jurisdiction over this claim.

**B.    The complaint states valid claims for relief.**

    1.    *The Rule and State law irreconcilably conflict.*

The Department alleges that its Final Rule does not disturb the Plaintiff States' marriage laws but only "fine-tunes the operation of the federal Family and Medical Leave Act." Doc. 11 at 11. But that attempt to minimize the new rule's effect blinks reality because the Plaintiff State employers cannot comply with both their own State law and the Department's new definition of "spouse." Plaintiff States, as employers, must violate either the federal rule or their State law.

The Department's fallback argument is that "any assertion of a conflict between the Final Rule and Texas's marriage laws fails because Texas's ban on recognizing out-of-state marriages of same-sex couples is unconstitutional." Doc. 11 at 12. That position conflicts with federal law and the rulings of several courts across the country. *See* 28 U.S.C. § 1738C (full faith and credit statute); *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014) *cert. granted* 135 S. Ct. 1040 (2015) (upholding the constitutionality of state bans on recognizing other States' same-sex marriages); *Robicheaux v. Caldwell*, 2 F.Supp.3d 910 (E.D. La. 2014) (same). Even more troubling, though, is the stunning assertion of authority by an administrative agency to adjudicate the constitutionality of state law. Having dispensed with the necessity of Congress to change federal law, now the Department appears to dispense with the need for federal courts to adjudicate questions of constitutionality as well.

    2.   *The Final Rule violates* Windsor *and the full faith and credit statute.*

*Windsor* reaffirmed the States' authority to regulate domestic relations. Similarly, the full faith and credit statute protects States' sovereignty in the domestic relations arena by preserving their rights to regulate marriage consistent with voters' political will. 28 U.S.C. § 1738C. The Department is mistaken that the legislative history manifests an intent to "at most, to giving a marriage 'full faith and credit,' that is, according the marriage full effect within the state's own legal system." Doc. 11 at 15. The legislative history instead confirms that the law "provides that, in the event Hawaii (or some other State) permits same-sex couples to 'marry,' other States will not be obligated or required, by operation of the Full Faith and Credit Clause of the United States Constitution, to recognize that 'marriage,' or *any right or claim arising from it.*" H.R. Rep. No. 104-664, at 25 (emphasis added). And this language comports with the words of the statute, which provides that no State must give effect to a same-sex marriage "or a right or claim arising from such relationship." 28 U.S.C. § 1738C. But recognizing an out-of-state same-sex marriage and attaching the legal benefit of FMLA leave to it is precisely what the Final Rule requires. The Department's cramped reading of the full faith and credit statute and *Windsor* cannot be squared with their actual language.

    3.   *The Final Rule breaches the Tenth Amendment.*

The Defendants, contrary to their argument that the Final Rule does not harm State employers, admit that the "FMLA merely regulates activities of state government entities in their capacity as employers," and that such regulation does not run afoul of the Tenth Amendment.

This assertion is incorrect because the Final Rule controls and influences the Plaintiff States, as sovereigns, by requiring them suspend to State marriage laws and policies so that State agencies—as employers—can comply with federal regulations. The Final Rule also effectively commands Plaintiff States, as employers, to interpret the marriage laws of other States and foreign countries. In border cities like Wichita Falls, it takes little imagination to see the problems that will arise with the Department's rule. With Oklahoma now judicially required to grant same-sex marriages,[3] same-sex couples living and working in Wichita Falls can easily evade Texas marriage law by driving across the border to obtain a marriage license and then require their employer in Texas to grant spousal leave under the FMLA.

    4.    *The Final Rule is an invalid expansion of the FMLA.*

The Defendants contend the Eleventh Amendment immunity claim fails because, under *Nevada Department of Human Resources v. Hibbs*, Congress validly abrogated the States' immunity under the family care provision of the FMLA. 538 U.S. 721 (2003). Mysteriously absent from the Department's Eleventh Amendment analysis is any mention of *Coleman v. Court of Appeals of Maryland*, where the Supreme Court held that Congress failed to make the requisite findings of a pattern of unconstitutional state conduct with respect to the self-care provision of the FMLA. 132 S.Ct. 1327, 1334-35 (2012). Under the Department's approach to the Eleventh Amendment, it could redefine "family" to include oneself and save the self-care provision from its constitutional infirmity under *Coleman*. Or the Department could

---

[3] *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014).

broaden the family care provision by expanding defined terms in the FMLA (as it has here). Quite simply, the Eleventh Amendment and federal courts forbid the type of power grab the Department is attempting.

The Fifth Circuit made clear in *Neinast v. Texas* that a challenged agency regulation itself must meet the congruent and proportional test, which requires findings of unconstitutional state conduct and a remedy tailored to those wrongs. 217 F.3d 275, 280-81 (5th Cir. 2000). That court upheld an Eleventh Amendment argument when the agency regulation was not tailored to the findings Congress made when passing the remedial statute. *Id.* at 282.

Here, Congress's findings involved workplace discrimination against women. Congress made no findings in 1993, and the Department made none during the rulemaking process, that the States have a pattern of unconstitutional discrimination in granting leave for employees to care for same-sex spouses—the field the Department expands the FMLA to cover.[4] And the remedy requiring States to grant such leave is hardly congruent and proportional to a complete absence of findings of a pattern of State wrongdoing.

5. *The Department's Final Rule displaces the Plaintiff States' marriage laws.*

The Department argues that the Final Rule does not preempt Texas law "because Texas law and the February 2014 rule are compatible with one another." Doc. 11 at 20. Today, under the FMLA's

---

[4] Indeed, the Department is seemingly unaware of whether Texas "employs any person who is married to a person of the same sex." Doc. 11 at 8.

present definition of "spouse," the Rule and the law of the Plaintiff States are compatible because the definition of "spouse" follows the law of the State where the person lives.  This approach respects the States' "virtually exclusive" power to regulate domestic relations. *See Windsor*, 133 S.Ct. at 2691 (2013) (recognizing that "regulation of domestic relations" is "an area that has long been regarded as a virtually exclusive province of the States").  The Department's rewrite of "spouse" by tossing out the longstanding state-of-residence approach in favor of a place-of-celebration definition creates unavoidable conflict by forcing the Plaintiff States to grant FMLA leave to people who are unmarried under their State law.

## II. The Plaintiff States have demonstrated they will suffer irreparable harm when the Final Rule goes into effect.

The Plaintiff States are not required to produce evidence of harm when the conflict between the Final Rule and Texas law is so clear.  That the Final Rule effectively enjoins the Plaintiff States from following their own marriage laws to give effect to conflicting marriage laws of other States is an irreparable injury.  Doc. 14 at 13-15, 22-23.

Moreover, state agencies undoubtedly must change their FMLA policies or risk allegation they have violated federal law.  For instance, under the Texas Attorney General's current policy, an application for spousal leave would be denied if the applicant's marriage is invalid under Texas law.  On March 27, these policies will violate federal rule if left in their current form.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General of Arkansas

JAMES D. "BUDDY" CALDWELL
Attorney General of Louisiana

TREY PHILLIPS
First Assistant Attorney General

LOUISIANA DEPARTMENT OF JUSTICE
P.O. Box 94005
Baton Rouge, LA 70804

S. KYLE DUNCAN[5]
Louisiana Bar No. 25038
Special Assistant Attorney General
Duncan PLLC
1629 K. Street NW, Suite 300
Washington, DC 20006
(202) 714-9492
kduncan@duncanpllc.com
ATTORNEYS FOR PLAINTIFF
STATE OF LOUISIANA


DOUG PETERSON
Attorney General of Nebraska

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

SCOTT KELLER
Solicitor General

CAM BARKER
Deputy Solicitor General

SHELLEY DAHLBERG
Associate Deputy Attorney General

ANGELA V. COLMENERO
Division Chief - General Litigation

MICHAEL P. MURPHY
Assistant Solicitor General

BETH KLUSMANN
Assistant Solicitor General

---

[5] *Pro hac vice* application to be submitted in accordance with Local Rules.

/s/ William T. Deane
**WILLIAM T. DEANE**
Texas Bar No. 05692500
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1534
FAX: (512) 320-0667
bill.deane@texasattorneygeneral.gov
*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the electronic-filing manager to all parties in compliance with TRCP 21a on this the 25th day of March, 2015.

                                          <u>/s/ William T. Deane</u>
                                          WILLIAM T. DEANE
                                          Assistant Attorney General