IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| STATE OF ARKANSAS, | § | |
| STATE OF LOUISIANA, | § | |
| and STATE OF NEBRASKA, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 7:15-cv-00056-O |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| UNITED STATES DEPARTMENT | § | |
| OF LABOR, | § | |
| and THOMAS E. PEREZ, in his | § | |
| Official Capacity as SECRETARY | § | |
| OF LABOR, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff State of Texas's Complaint for Declaratory and Injunctive Relief and Application for Temporary Restraining Order and Preliminary Injunction/Stay of Administrative Proceedings (ECF No. 1), filed March 18, 2015; Defendants' Opposition to Plaintiff's Application for a Preliminary Injunction (ECF No. 11), filed March 19, 2015; Texas's Motion for Hearing on Application for a Temporary Restraining Order (ECF No. 12), filed March 24, 2015; Defendants' Response to Plaintiff's Motion for a Hearing (ECF No. 13), filed March 24, 2015; State of Texas, State of Arkansas, State of Louisiana, and State of Nebraska's (collectively "Plaintiffs" or "Plaintiff States") Amended Complaint for Declaratory and Injunctive Relief and Application for Temporary Restraining Order and Preliminary Injunction/Stay of Administrative Proceedings (ECF No. 14), filed March 25, 2015; and Plaintiffs' Reply in Support of Application

for Temporary Restraining Order and Preliminary Injunction/Stay of Administrative Proceedings (ECF No. 15), filed March 25, 2015.[1] Having considered the motions, related briefing, pleadings, and applicable law, the Court finds that Plaintiffs' application for a preliminary injunction should be and is hereby **GRANTED**.

## I.    BACKGROUND

This is an action for declaratory and injunctive relief regarding the United States Department of Labor's ("Department") recently promulgated final rule defining "spouse" ("Final Rule") under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611. Am. Compl. 1–2, ECF No. 14. On March 25, 2015, Plaintiff State of Texas amended its Complaint to add State of Arkansas, State of Louisiana, and State of Nebraska as plaintiffs. Am. Compl. 1–3, ECF No. 14.[2] Collectively, Plaintiffs seek a temporary restraining order[3] and a preliminary injunction, under Federal Rule of Civil Procedure 65, to enjoin and stay the application of the Final Rule, which is codified as 29 C.F.R. Part 825 and becomes effective on March 27, 2015. Am. Compl. 20–21, ECF No. 14. Alternatively,

---

[1] Having considered Defendants' Opposition to Plaintiffs' Motion to Extend Time to File Reply (ECF No. 17) and applying the four factors given in *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012), the Court finds good cause to **GRANT** Plaintiffs' Opposed Motion to Extend Time to File Reply (ECF No. 16) by seven hours due to excusable neglect resulting from the addition of new parties and the approaching deadline. *See* Fed. R. Civ. P. 6(b)(1)(B).

[2] In footnote one of the Amended Complaint, Plaintiffs note that the "Amended Complaint adds new parties but adds no new claims or independent legal bases for temporary relief in an effort not to moot Defendant's Opposition." Am. Compl. 3 n.1, ECF No. 14.

[3] In Plaintiff's Motion for a Hearing (ECF No. 12), Plaintiff Texas clarifies that it continues to seek a temporary restraining order, requesting a hearing on the matter. The Court construes the application for a temporary restraining order to be opposed. *See* Defs.' Opp'n 6 n.1, ECF No. 11. The Court **DENIES** this application for an immediate hearing **as moot**, with leave for the parties to request a hearing should they believe one necessary in light of this order.

Plaintiffs seek a stay of administrative proceedings under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705. *Id.*

## A.    FMLA Rulemaking

The FMLA defines "spouse" as "a husband or wife, as the case may be." 29 U.S.C. § 2611(13). In 1993, the Department's Interim Final Rule defined "spouse" as "a husband or wife as defined or recognized under state law for purposes of marriage in states where it is recognized." 58 Fed. Reg. 31817, 31835 (June 4, 1993). The 1995 Final Rule clarified that the law of the State where the employee resides would control for the purpose of determining eligibility for FMLA spousal leave. 80 Fed. Reg. 9990 (Feb. 25, 2015).

On June 27, 2014, the Department published a Notice of Proposed Rulemaking, in which it proposed to revise the regulation defining "spouse" in light of the United States Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013). 79 Fed. Reg. 36445-01 (June 27, 2014). Specifically, the Department "proposed to change the definition of spouse to look to the law of the jurisdiction *in which the marriage was entered into* (including common law marriages), as opposed to the law of the State in which the employee resides, and to expressly reference the inclusion of same-sex marriages in addition to common law marriages." Summ. Comments, 80 Fed. Reg. 9991 (Feb. 25, 2015) (emphasis added). The proposed rule reads:

> Spouse, as defined in the [FMLA] statute, means a husband or wife. For purposes of this definition, husband or wife refers to the other person with whom an individual entered into marriage as defined or recognized under State law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State. This definition includes an individual in a same-sex or common law marriage that either (1) was entered into in a State that recognizes such marriages or, (2) if entered into outside

3

of any State, is valid in the place where entered into and could have been entered into in at least one State.

79 Fed. Reg. 36454 (June 27, 2014); 29 C.F.R. § 825.102.

After the notice and comment period concluded, the Department addressed concerns about potential conflicts with state laws prohibiting recognition of same-sex marriage, concluding that "[t]he Final Rule does not require States to recognize or give effect to same-sex marriages or to provide any state benefit based on a same-sex marriage." 80 Fed. Reg. 9994 (Feb. 25, 2015). Instead, the Department contends "[t]he Final Rule impacts States only in their capacity as employers and merely requires them to provide unpaid FMLA leave to eligible employees based on a federal definition of spouse." *Id.* The comment period for the proposed rule ended on August 11, 2014, and the Final Rule regarding the definition of "spouse" is set to take effect on March 27, 2015. 80 Fed. Reg. 9989–90 (Feb. 25, 2015).

### B.    State Law

Texas law does not recognize same-sex marriages. Am. Compl. 8, ECF No. 14. Under Article I, Section 32 of the Texas Constitution, "(a) Marriage in this state shall consist only of the union of one man and one woman. (b) This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage." Tex. Const. art. I, § 32; *see also* Tex. Fam. Code Ann. § 6.204(b) (West 2013) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state."); Tex. Fam. Code Ann. § 2.001(b) (West 2013) ("A [marriage] license may not be issued for the marriage of persons of the same sex."); Tex. Fam. Code Ann. § 2.401(a) (West 2013) (limiting informal marriages to unions

4

of "a man and woman").[4] The Texas Family Code further prohibits the state, including agencies and

political subdivisions of the state, from giving effect to a:

> (1) public act, record, or judicial proceeding that creates, recognizes, or validates a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction; or

> (2) right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction.

Tex. Fam. Code Ann. § 6.204(c) (West 2013).

The other Plaintiff States — Arkansas, Louisiana, and Nebraska — hold similar restrictions

on state recognition of same-sex marriages. *See* Am. Compl. 8–10, ECF No. 14; *see, e.g.*, Ark.

Const. amend. 83, § 2 ("Legal status for unmarried persons which is identical or substantially similar

to marital status shall not be valid or recognized in Arkansas, except that the legislature may

recognize a common law marriage from another state between a man and a woman."); La. Civ. Code

Ann. art. 3520(B) ("A purported marriage between persons of the same sex violates a strong public

policy of the state of Louisiana and such a marriage contracted in another state shall not be

recognized in this state for any purpose, including the assertion of any right or claim as a result of

the purported marriage."); Neb. Const. art. I, § 29 ("Only marriage between a man and a woman shall

be valid or recognized in Nebraska. The uniting of two persons of the same sex in a civil union,

domestic partnership, or other similar same-sex relationship shall not be valid or recognized in

---

[4] The federal district court in *De Leon v. Perry*, 975 F. Supp. 2d 632, 666 (W.D. Tex. 2014), found this section of the Texas Constitution, as well as corresponding sections of the Texas Family Code, unconstitutional. The district court stayed execution of its preliminary injunction pending the final disposition of the appeal to the Fifth Circuit Court of Appeals. *See De Leon v. Abbott*, No. 14-50196 (5th Cir.).

Nebraska.").[5] Accordingly, because of the similarity between the laws of the Plaintiff States, the Court primarily analyzes the impact on the laws of Plaintiff Texas.

### C.    *Windsor* **Decision and the Full Faith and Credit Statute**

In *United States v. Windsor*, 133 S. Ct. 2675 (2013), the plaintiff, whose same-sex marriage was recognized by the State of New York, brought suit against the federal government to claim the federal estate tax exemption for surviving spouses. The Supreme Court ruled in favor of the plaintiff, holding unconstitutional Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, which defined "marriage" as "only a legal union between one man and one woman as husband and wife." *Windsor*, 133 S. Ct. at 2683, 2693–96; *see also Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57–58 (5th Cir. 2014).

Section 2 of DOMA, 28 U.S.C. § 1738C ("Full Faith and Credit Statute"), was not at issue in *Windsor* and, to date, it remains in effect. *Windsor*, 133 S. Ct. at 2682. The statute reads:

> No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.

28 U.S.C. § 1738C.

## II.    JURISDICTION

The Court maintains subject-matter jurisdiction under 28 U.S.C. § 1331 as the matter arises under federal law. Venue is proper in the Northern District of Texas. Under 28 U.S.C. § 1391(e)(1):

---

[5] Many of statutes and state constitutional provisions cited by Plaintiffs have been called into doubt or found unconstitutional by courts. *See, e.g.*, *Citizens for Equal Prot., Inc. v. Bruning*, 368 F. Supp. 2d 980, 1005 (D. Neb. 2005), *rev'd*, 455 F.3d 859 (8th Cir. 2006).  It is anticipated that the Supreme Court will clarify these issues this term.

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C.A. § 1391(e)(1) (West 2014). Here, the United States of America, the Department of Labor, and Thomas E. Perez, in his official capacity as Secretary of Labor, are Defendants. Because Plaintiff Texas and its agencies are employers in Wichita Falls, a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the Final Rule to become effective. Therefore, venue is proper in this district.

The Court is further authorized to award declaratory relief holding agency actions unlawful, if appropriate, under the APA, 5 U.S.C. §§ 704 and 706. The Court is authorized to award the requested injunctive relief, if appropriate, under 28 U.S.C. § 1361, which reads, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.A. § 1361.

## III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" and only will be granted if the movant carries its burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The Court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579,

582 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *see also* Fed. R. Civ. P. 65; *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant or deny a preliminary injunction is discretionary with the district court."). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621. This four-factor test is also applied to determine whether to grant a plaintiff's application for a temporary restraining order and whether to stay an agency action pending judicial review. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Evergreene Nursing Care Ctr. v. Leavitt*, No. 3:07-CV-00024, 2007 WL 1601476, at *2 (W.D. Va. June 4, 2007); *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F.Supp. 279, 280 (E.D. Ark. 1983); *see also* 5 U.S.C.A. § 705 (West 2014).

## IV.   ANALYSIS

The issue before the Court is whether the Department exceeded its jurisdiction by promulgating a Final Rule that requires the Plaintiffs to violate the Full Faith and Credit Statute and/or state law prohibiting the recognition of same-sex marriages from other jurisdictions. The Court addresses each of the four factors required for the issuance of a preliminary injunction in turn. *See Campaign for S. Equal.*, 773 F.3d at 57.

### A.   Likelihood of Success on the Merits

The Court first must determine whether Plaintiffs have met their burden to show that there is a substantial likelihood that they will prevail on claims that the Department's Final Rule is invalid under the APA, 5 U.S.C. § 706. Section 706(2) of the APA, in relevant part, requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be--(A)

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). Plaintiffs present six arguments to support invalidity; Defendants, in addition to responding to these arguments, bring additional standing and ripeness challenges.[6] The Court first turns to the issue of standing.

1.     Defendants' Standing Argument

Defendants argue that Plaintiffs have not established that they are likely to show standing and therefore Plaintiffs are not likely to reach, let alone succeed on, the merits of the claims. Defs.' Opp'n 7, ECF No. 11.

Constitutional standing requires a plaintiff to establish that she has suffered or is immediately in danger of suffering an injury-in-fact traceable to the defendant's actions that will be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The injury-in-fact must be "concrete and particularized" and "actual or imminent," as opposed to "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560. This requirement is in place to ensure that the courts address only cases that present a live case or controversy, and the party invoking federal jurisdiction bears the burden of establishing these elements of standing. *Id.* at 560–61. When multiple plaintiffs seek an injunction, the Court need only establish standing by the presence of at least one plaintiff who can assert the contested rights as his own. *See Vill. of Arlington Heights*, 429 U.S. at 264.

---

[6] The Court notes that all determinations regarding the likelihood of success on the merits recited in this Order are subject to review upon a full examination of the merits.

According to Defendants, Plaintiffs fail to establish a case or controversy because they have not alleged any immediate plan to deny a request for spousal leave on the basis of the sex of the marital partners. Defs.' Opp'n 8, ECF No. 11. Defendants contend that Plaintiffs have not identified particular governmental employees or other state employers who will be affected by the Final Rule, "[n]or has [Plaintiff] identified any official policy, practice, or requirement for denying leave to [such] employees." *Id.* Thus, Defendants conclude, the controversy is "purely hypothetical." *Id.*

Plaintiffs argue that harm arises because the Final Rule would require the Plaintiff States to violate state law, which is itself an injury-in-fact. Am. Compl. 13–14, ECF No. 14; Compl. 19, ECF No. 1; *Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) ("Federal regulatory action that preempts state law creates a sufficient injury-in-fact to satisfy this prong."). For instance, Plaintiff Texas alleges that the Final Rule would affect its obligations under the Texas Family Code. *See* Tex. Fam. Code § 6.204(c)(2). According to Plaintiff Texas, its laws prohibit the state from giving effect to any "legal protection, benefit, or responsibility" asserted on the basis of a same-sex marriage and federal law protects its right to do so. *See id.*; 28 U.S.C.A. § 1738C. The other Plaintiff States make substantially the same allegations in the Amended Complaint. *See* Am. Compl. 8–10, 13–14, ECF No. 14. The Plaintiff States further argue in their Reply that the states are better positioned to interpret their own laws than the Department, as a federal agency. Pls.' Reply 1, ECF No. 15 ("[Defendants']

assertion—that the Plaintiff States do not understand their own laws—should be rejected, especially when the Department did not cite a single provision of Texas law to support its argument.").

In the Amended Complaint, Plaintiffs allege that they are immediately burdened by having to decide whether to honor the Final Rule by granting leave requests and by changing agency FMLA Policies. Am. Compl. 14, ECF No. 14. In particular, they allege that "[o]ne Texas agency employing over 54,000 employ[ee]s has already received inquiries . . . regarding the agency's leave policy with respect to the Final Rule and expects to receive FMLA leave requests once the Final Rule takes effect." *Id.*

In support, Plaintiffs attach to the Amended Complaint the Department's "Definition of Spouse Under the Family and Medical Leave Act," 80 Fed. Reg. 9997–98 (Feb. 25, 2015). App. Supp. Am. Compl. 9–10, ECF No. 14-2; App. Supp. Compl. 9–10, ECF No. 1-7. In this regulation, the Department estimates that there will be "8,202 new instances of FMLA leave annually as a result of the proposed change to the regulatory definition of spouse." *Id.* (noting that this statistic applies nationwide and is likely an overestimate). The report continues:

> Because FMLA leave is unpaid leave, the costs to employers resulting from this Final Rule are: regulatory familiarization, maintenance of preexisting employee health benefits during FMLA leave, and administrative costs associated with providing required notices to employees, requesting certifications, reviewing employee requests and medical certifications, and making necessary changes to employer policies.

80 Fed. Reg. 9998 (Feb. 25, 2015). Accordingly, the FMLA confers both proscriptive and prescriptive rights upon employees. *See id.*; 29 C.F.R. § 825.220. This means, in addition to prohibiting employers from interfering with employee rights, employers are actively required under the FMLA to provide notices to employees and to make changes to employer policies. *See* 80 Fed.

Reg. 9998 (Feb. 25, 2015). Requiring Plaintiffs to implement and provide notice of these changes to all employees provides a concrete injury-in-fact.

The Court concludes that all of the Plaintiff States have met their burden of alleging that the Final Rule will require the states to violate their own laws. Moreover, as the Final Rule is scheduled to take effect on March 27, 2015, Plaintiffs allege a sufficiently immediate threat of harm. Defendants do not contest the remaining *Lujan* standing factors, accordingly, Plaintiffs have standing to bring suit.

### 2.    Defendants' Ripeness Argument

Defendants next argue that the case is not yet ripe for judicial resolution because the specific facts are not sufficiently concrete.[7] Defs.' Opp'n 9–10, ECF No. 11. As stated above, however the Court concludes that the harm to the state is sufficiently concrete and the issues in this case are justiciable. *See Lujan*, 497 U.S. at 873 ("[A]gency action is not ordinarily considered 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to manageable proportions, and its factual components fleshed out, by concrete action that harms or threatens to harm the complainant."). Accordingly, the Court finds that this matter is ripe for review.

### 3.    Plaintiffs' Argument that the Final Rule Conflicts with FMLA Statute

Plaintiffs first argue that the Final Rule's definition of marriage conflicts with the statutory definition given in the FMLA, and therefore the Final Rule should be found invalid. Am. Compl. 16,

---

[7] Defendants add that there is no ripe dispute about Texas's sovereign immunity claim because that issue would ripen only were Texas sued by a citizen. Defs.' Opp'n 10, ECF No. 11. As the Court does not reach or rely upon Plaintiff's sovereign immunity claim in this Order, the Court does not address this particular ripeness argument at this time.

ECF No. 14; Compl. 12, ECF No. 1; *see also* 29 U.S.C. § 2611(13) (The FMLA defines "spouse" as "a husband or wife, as the case may be.").

When a court is called upon to review an agency's construction of the statute it administers, the court looks to the framework set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). *See* Defs.' Opp'n 21, ECF No. 11. The first step of the *Chevron* review is to ask "whether Congress has directly spoken to the precise question at issue." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 842). "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.' . . . But if Congress has not specifically addressed the question, a reviewing court must respect the agency's construction of the statute so long as it is permissible." *Id.* (quoting *Chevron*, 467 U.S. at 842–43); *accord Dhuka v. Holder*, 716 F.3d 149, 154 (5th Cir. 2013).

To determine whether Congress has spoken to the question at issue, a court should read the words of the statute "in their context and with a view to their place in the overall statutory scheme." *Id.* at 133 (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Further, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Id.* "In addition, we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency." *Id.* With these principles in mind, the Court turns to the question at issue here.

The Final Rule concerns whether the Department may define "spouse" in a way that requires states that do not recognize same-sex marriages to recognize same-sex marriages entered into in

other jurisdictions for purposes of the FMLA. To determine whether Congress has spoken directly to this issue, the Court will consider the context of the language in the FMLA and Congress' subsequent actions concerning same-sex marriage.

When the FMLA was enacted in 1993, no state had yet legalized same-sex marriage. *See* Am. Compl. 12, ECF No. 14. Thus, at the time of enactment, the definition of "spouse" would not have been interpreted to include marital partners of the same sex. *See id.* Still, the original meaning may not be dispositive, because "[a]t the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings." *Brown & Williamson*, 529 U.S. at 143.

Three years later, Congress spoke regarding the definition of marriage when it enacted DOMA in 1996. *See* Am. Compl. 4, ECF No. 14. Section 3 of DOMA defined marriage as "only a legal union between one man and one woman as husband and wife." *Windsor*, 133 S. Ct. at 2683. This section was declared unconstitutional by the Supreme Court in *Windsor*, as Congress did not have the authority to limit the State of New York's definition of marriage in this way. *Id.* at 2693–96. Section 2 of DOMA, the Full Faith and Credit Statute, was not at issue in *Windsor* and it remains in effect. *See* 28 U.S.C. § 1738C. It provides that no State "shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State . . . or a right or claim arising from such relationship." 28 U.S.C.A. § 1738C. Accordingly, based upon the original meaning and subsequent acts of Congress, it is clear that Congress intended to give marriage its traditional, complementarian meaning. Congress further intended to preserve a state's ability to

define marriage in this way without being obligated under the laws of another jurisdiction which may define it differently.

However, a court must disregard Congress' intentions to the extent such intentions exceed Congress' authority under the Constitution. *Windsor* held that Congress' power to define marriage was limited, choosing instead to honor the State of New York's decision to recognize same-sex marriages. *Windsor*, 133 S. Ct. at 2693–96. The basis and proper interpretation of *Windsor*'s holding is debated by the parties in the instant action. The parties' disagreement mirrors a split in the Federal Circuits regarding whether principles of individual rights or of federalism ground the *Windsor* opinion.[8] The question is currently pending before the Supreme Court. *See Obergefell v. Hodges*, 135 S. Ct. 1039 (2015). At a minimum, it is clear from *Windsor* that Congress does not have unlimited power to impose its definition of marriage on the states.

"In making the 'step one' [*Chevron*] inquiry, our operating premise must be that an agency . . . cannot have greater power to regulate state conduct than does Congress." *Neinast v. Texas*, 217 F.3d 275, 281 (5th Cir. 2000). "In addition, we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency." *Brown & Williamson*, 529 U.S. at 133. Considering

---

[8] *See, e.g.*, *DeBoer v. Snyder*, 772 F.3d 388, 414 (6th Cir. 2014), *cert. granted sub nom. Obergefell v. Hodges*, 135 S. Ct. 1039 (2015) (The court relies upon federalism principles as "[a]ny other reading of *Windsor* would require us to subtract key passages from the opinion and add an inverted holding. The Court noted that New York 'without doubt' had the power under its traditional authority over marriage to extend the definition of marriage to include gay couples and that Congress had no power to enact 'unusual' legislation that interfered with the States' long-held authority to define marriage."); *Latta v. Otter*, 771 F.3d 456, 474 (9th Cir. 2014) (The court relies upon equal protection principles as "a primary purpose of the Constitution is to protect minorities from oppression by majorities. As *Windsor* itself made clear, 'state laws defining and regulating marriage, of course, must respect the constitutional rights of persons.' Thus, considerations of federalism cannot carry the day for defendants.") (internal citation omitted); *Bostic v. Schaefer*, 760 F.3d 352, 378 n.8 (4th Cir. 2014) (noting lower-court split in approaching federalism issue).

Congress' legislation regarding the definition of marriage, it is unlikely that Congress intended to delegate to the Department the right to regulate spousal benefits in a manner that conflicts with the Full Faith and Credit Statute. Further, Congress cannot delegate power that it does not possess, such as the power to unilaterally impose its definition of marriage upon the states. Under both *Windsor* and the Full Faith and Credit Statute, as they stand today, Congress has not delegated to the Department the power to force states defining marriages traditionally to afford benefits in accordance with the marriage laws of states defining marriage to include same-sex marriages.[9]

"Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *Brown & Williamson*, 529 U.S. at 125–26 (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)). Without a doubt, the questions involved in this action are serious and must be resolved by the proper authority. The Supreme Court will soon address these issues and provide much needed clarity for the lower courts.

Absent clear direction to the contrary by the Supreme Court or Fifth Circuit Court of Appeals, the Court concludes that the agency action here is inconsistent with Congress' clear and unambiguous intention and this action exceeds the authority Congress delegated to the agency. *See Brown & Williamson*, 529 U.S. at 133. The Full Faith and Credit Statute affirms Congress' intention to reserve the power to define marriage and accompanying rights and benefits to the states, and *Windsor* cabins Congress' authority to aggrandize that power. Thus, Congress could not have delegated to the Department the power to define marriage in a way as to override the laws of states

---

[9] As opposed to the previous rule, defining "spouse" according to the employee's state of residency, the "place of celebration" Final Rule is not neutral between states with different marriage policies.

16

prohibiting same-sex marriages. *See* 5 U.S.C. § 706(2)(A), (C). For the foregoing reasons, Plaintiffs have shown the Final Rule is likely to be found to be contrary to the statute.

Since Plaintiffs have demonstrated a substantial likelihood of success on the merits under this cause of action, the Court now moves to Plaintiffs' next challenge to the Final Rule.

      4.     <u>Plaintiffs' Argument that the Final Rule Violates the Federal Full Faith and Credit Statute</u>

Plaintiffs next contend that the Department's Final Rule directly conflicts with federal law, and thus should be found invalid. Under Section 706(2)(A) of the APA, a reviewing court must "hold unlawful and set aside agency action" found to be "not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants argue that there is, in fact, no conflict between the Final Rule and federal law. Plaintiffs are correct.

The Federal Full Faith and Credit Statute, 28 U.S.C.A. § 1738C, provides that no state "shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, . . . or *a right or claim arising from such relationship*." 28 U.S.C.A. § 1738C (emphasis added). Plaintiffs argue that the text of this statute clearly forbids the situation at issue, in which a state, and in particular state agencies, are required to give effect to a federal regulation that confers a "right or claim" arising from same-sex marriages from other jurisdictions. Am. Compl. 10–11, ECF No. 14; Compl. 7, ECF No. 1; Pls.' Reply 7, ECF No. 15. Defendants respond that the Final Rule does not transgress this law because it requires states to act only in their capacity as employers, and not in their official capacity. Defs.' Opp'n 14, ECF No. 11. The Court finds that Plaintiffs are likely to show that the language of the statute is clear and expansive, and the context

17

does not indicate the presence of such a distinction or exception to the statute's prohibition. *See supra* Part IV.A.3.

As the Full Faith and Credit Statute remains valid, Plaintiffs will likely succeed on the merits under this cause of action.[10] Because federal agencies may not promulgate rules in conflict with federal statutes, the Final Rule will likely be found to be "otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(A), (C). Accordingly, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits for this claim.

### 5. Plaintiffs' Argument that the Final Rule Improperly Preempts State Law

According to Plaintiffs, because the Final Rule conflicts with state laws regarding marriage, the Final Rule could be valid only if Congress intended to preempt the states' definitions of marriage. In response, Defendants argue that Plaintiffs' preemption claim falls outside of the Court's subject-matter jurisdiction, and alternatively that the claim would fail on the merits.

### a. Defendants' Jurisdictional Argument

---

[10] Defendants argue that "[i]n any event, any assertion of a conflict between the February 2015 rule and Texas's marriage laws fails because Texas's ban on recognizing out-of-state marriages of same-sex couples is unconstitutional" as a violation of the Equal Protection Clause. Defs.' Opp'n 12, ECF No. 11. Because only rational basis scrutiny applies, the Court declines to find here that Texas does not have a rational basis for its marriage law. *See Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004) ("Neither the Supreme Court nor this court [the Fifth Circuit Court of Appeals] has recognized sexual orientation as a suspect classification [or protected group]; nevertheless, a state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims.") (citing *Romer v. Evans*, 517 U.S. 620, 631–32 (1996)); *James v. Hertzog*, 415 F. App'x 530, 532 (5th Cir. 2011) (relying upon *Johnson*, 385 F.3d at 532); *Bostic*, 760 F.3d at 378 n.8 ("In *Windsor*, the Court did not label the type of constitutional scrutiny it applied, leaving us unsure how the Court would fit its federalism discussion within a traditional heightened scrutiny or rational basis analysis."); *Robicheaux v. Caldwell*, No. 13-5090, 2014 WL 4347099, at *917 (E.D. La. Sept. 3, 2014) (applying rational basis noting that "*Windsor* starkly avoids mention of heightened scrutiny"); *DeBoer*, 772 F.3d at 404–08 (describing possible rational bases).

Defendants argue that state authorities may not bring suit in federal court to establish that state laws are not preempted. Defs.' Opp'n 10, ECF No. 11. They rely upon *Franchise Tax Board*, which holds, "federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 21 (1983).

However, as noted by the Second Circuit Court of Appeals, "[t]he Supreme Court itself, in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, . . . cautioned that the seemingly expansive language of *Franchise Tax Board* should be read narrowly." *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 809 (1986)). According to the Second Circuit, "[t]he relevant passage of *Franchise Tax Board* reads: 'We have often held that a case "arose under" federal law where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Id.* at 176 n.5 (quoting *Franchise Tax Bd.*, 463 U.S. at 90). Another court summarized the holding as an application of the *Skelly Oil* doctrine, which demands that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Boeing Co. v. March*, 656 F. Supp. 2d 837, 843 (N.D. Ill. 2009).

Here, unlike in *Franchise Tax Board*, the issues involving interpretation of federal statutes do not arise merely as defenses for state law claims. Rather, preemption is the basis for the Plaintiffs' claim that the Final Rule is invalid stated in the Amended Complaint. As Plaintiffs explain in their Reply, Plaintiffs do not allege a claim that "that the Rule does not preempt State law, but rather [they allege] that the Rule is invalid because it illegally attempts to preempt State law." Pls.' Reply 5, ECF No. 15. Accordingly, the Court concludes that the *Skelly Oil* doctrine and *Franchise Tax Board* do

19

not apply and the Court retains jurisdiction to hear this claim. The Court now turns to the merits of

Plaintiffs' preemption claim.

### b.   Defendants' Argument on the Merits

Defendants argue that there is no preemption because Texas law and the Final Rule do not

conflict and the Final Rule does not purport to displace Texas law regarding marriage. Defs.' Opp'n

20, ECF No. 11. According to Plaintiffs, there are conflicts, and Congress did not intend to preempt

state laws defining marriage through the FMLA; thus, the Department's Final Rule exceeds the

agency's authority. Am. Compl. 12, ECF No. 14; Compl. 10, ECF No. 1.

"When Congress acts within the scope of its constitutionally delegated authority, the

supremacy clause empowers Congress 'to pre-empt state laws to the extent it is believed that such

action is necessary to achieve its purposes.'" *NCNB Tex. Nat'l Bank v. Cowden*, 895 F.2d 1488, 1494

(5th Cir. 1990) (quoting *City of New York v. FCC*, 486 U.S. 57, 63 (1988)). It follows that "Congress

may delegate regulatory authority to an administrative agency, and when the agency acts within the

scope of that authority, it may pre-empt and 'render unenforceable state or local laws that are

otherwise not inconsistent with federal law.'" *Id.* (quoting *City of New York*, 486 U.S. at 63). The

inquiry here is "whether the federal agency has properly exercised its own delegated authority rather

than simply whether Congress has properly exercised the legislative power." *City of New York*, 486

U.S. at 64. When considering whether Congress preempted state law, "the purpose of Congress is

the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

It is likely that Plaintiffs will demonstrate Congress did not intend to preempt state law with

its generic rule defining "spouse" in the FMLA. *See supra* Part IV.A.3. However, courts are not to

"narrow[ly] focus on Congress' [specific or express] intent to supersede state law." *City of New*

*York*, 486 U.S. at 64. Instead, courts are to focus on "the proper bounds of its lawful authority to undertake such action." *Id.* Unlike the previous agency rules defining "spouse" according to the employee's state of residency, this Final Rule bases it upon the jurisdiction in which the marriage was celebrated and is not neutral towards states holding different marriage policies. Having determined that the agency's Final Rule exceeded the scope of congressionally delegated authority in Part IV.A.3 and Part IV.A.4 above, the Court further finds here that such agency action improperly preempts state law forbidding the recognition of same-sex marriages for the purpose of state-given benefits. *See* 28 U.S.C. § 1738C. Accordingly, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits under this cause of action.

6.   Summary

In summary, because Plaintiffs have presented at least one claim on which they are likely to succeed, the Court concludes that Plaintiffs have met their burden under this factor in the four-part preliminary injunction test.[11] The Court now turns to the next three factors.

**B.     Threat of Irreparable Harm**

The next issue for the Court to address is whether Plaintiffs have demonstrated that the Department's rule would cause Plaintiffs to suffer irreparable harm. Under *Wilson*, whenever an enactment of a state's people is enjoined, the state suffers irreparable injury. 122 F.3d at 719; *accord Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *Maryland*, 133 S. Ct. at 3

---

[11] Having concluded that Plaintiff has met its burden, and given the time constraints involved in this request, the Court does not reach Plaintiff's claims based upon violations of the separation of powers, violations of the Tenth Amendment, or improper abrogation of Eleventh Amendment Immunity at this time. *See* Compl. 13–15, ECF No. 1.

("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Plaintiffs argue that, through the Final Rule at issue, an agency of the federal government would require the Plaintiff States to violate state law. Am. Compl. 22, ECF No. 14; Compl. 19, ECF No. 1. For instance, "by forcing state officials to choose between violating a federal rule to comply with Texas law, and *vice versa*, the Rule causes an irreparable injury." *Id.*

The Court finds that Plaintiffs have demonstrated that irreparable injury would occur. For example, the Final Rule would require Texas agencies to recognize out-of-state same-sex unions as marriages in violation of Texas Family Code § 6.204(c)(2), which expressly prohibits state agencies from "giving effect to a . . . right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction." *See* 80 Fed. Reg. 9994 (Feb. 25, 2015) ("The Final Rule impacts States only in their capacity as employers and merely requires them to provide unpaid FMLA leave to eligible employees based on a federal definition of spouse."). Defendants' argument that the Final Rule only affects the states in their capacity as employers does not take into account the clear and expansive language of the text. Accordingly, Plaintiffs have met their burden under this factor.

### C.    Balance of Hardships

The Court must next determine whether Plaintiffs have demonstrated that their threatened injury outweighs the threatened harm to Defendants. According to Plaintiffs, federal law has not preempted the states' rights to define marriage because marriage "has long been regarded as a virtually exclusive province of the States." Am. Compl. 23, ECF No. 14 (quoting *Windsor*, 133 S. Ct. at 1691). The issue of conflicts between state and federal definitions of marriage is currently

pending before both the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court. *See De Leon*, No. 14-50196 (5th Cir.); *Obergefell*, 135 S. Ct. 1039 (2015). In light of such forthcoming opinions, many lower courts challenging the validity of same-sex marriage bans have issued stays pending appeal, finding the interest in the stability and consistency of the law to outweigh the parties' immediate interests.

The Court finds the threatened injury to both parties in the instant action to be serious — whether it be an alleged intrusion of a federal agency over matters traditionally left to the states or whether it be an alleged invasion of equal treatment under the law. The Fifth Circuit, addressing this tension in the context of a state's same-sex marriage ban in *Campaign for Southern Equality*, wrote:

> We have little difficulty concluding that the legal questions presented by this case are serious, both to the litigants involved and the public at large, and that a substantial question is presented for this court to resolve. In reaching the merits of this appeal, this court will be confronted with a potential conflict between the state's historic "power and authority over marriage" and "the constitutional rights of persons" to make decisions in the most intimate and personal aspects of their lives. . . . [W]e are convinced by the opinions of our sister circuits that 'a detailed and in depth examination of this serious legal issue' is warranted before a disruption of a long standing status quo.

773 F.3d 55, 58 (5th Cir. 2014). Similarly, in light of the nature of both parties' interests, the Court finds that the issues here merit a detailed and in-depth examination. The Final Rule promulgated by the Department of Labor would impact, without legislative or judicial approval, the ability of state agencies to abide by the states' definition of marriage, related laws, and constitutional provisions. This action not only implicates federalism concerns, as in the numerous actions challenging marriage bans, it also implicates the question of whether a federal agency may require state actors to violate state laws through this act of rulemaking. Accordingly, Plaintiffs' interests are not outweighed by

the potential harm to Defendants caused by the delay of FMLA benefits. Therefore, the Court finds that Plaintiffs have met their burden under this factor.

### D.   Public Interest

The Court turns to the final, public interest factor in the preliminary injunction test. The Court recognizes the burden that individuals requesting spousal leave encounter, and this Order does not prohibit employers from granting leave to those who request leave to care for a loved one. However, a preliminary injunction must issue to prevent the Department from mandating enforcement of its Final Rule against the states. The public maintains an abiding interest in preserving the rule of law and enforcing the states' duly enacted laws from federal encroachment. *Abbott*, 734 F.3d at 419; *Wilson*, 122 F.3d at 719. Therefore, for the reasons stated above, the Court finds that Plaintiffs have met their burden to show that the public interest weighs in favor of a preliminary injunction.

## V.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' application for a preliminary injunction (ECF No. 14) should be and is hereby **GRANTED**. *See* Fed. R. Civ. P. 65. Accordingly, it is hereby **ORDERED** that the Department of Labor must **STAY** the application of the Final Rule, pending a full determination of this matter on the merits. It is **FURTHER ORDERED** that bond is set in the amount of one-hundred dollars. *See* Fed. R. Civ. P. 65(c). If requested by a party, the Court will set a hearing on this matter in Wichita Falls, Texas for April 13, 2015.

**SO ORDERED** on this **26th day** of **March, 2015**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**